1  PHILLIP A. TALBERT
   United States Attorney
2  GRANT B. RABENN
   PAUL A. HEMASATH
3  KEVIN C. KHASIGIAN
   Assistant U. S. Attorneys
4  2500 Tulare Street, Suite 4401
   Fresno, CA 93721
5  Telephone: (559) 497-4000

6  KENNETH A. BLANCO
   Acting Assistant Attorney General
7  Criminal Division, United States Justice Department
   LOUISA K. MARION
8  Trial Attorney
   Computer Crime and Intellectual Property Section
9  Washington, DC 20530
   Telephone: (202) 514-1026

10
   Attorneys for Plaintiff
11 United States of America

12

13              IN THE UNITED STATES DISTRICT COURT

14              EASTERN DISTRICT OF CALIFORNIA

15

16 UNITED STATES OF AMERICA,                    1:17-CV-00967-LJO-SKO

17              Plaintiff,

18              v.                               *AMENDED* VERIFIED COMPLAINT
                                                 FOR FORFEITURE *IN REM*
19 ALEXANDRE CAZES,
        a/k/a "Alpha02,"
20      a/k/a "Admin,"

21              Defendant,

22 2013 LAMBORGHINI AVENTADOR LP700-4, VIN:
   ZHWEC1476CLA01032, BANGKOK REGISTERED
23 PLATE NUMBER: 4 KOR KAI TOR TUNG – 3620
   BANGKOK,
24
   PORSCHE PANAMERA S, VIN: WP0ZZZ97ZGL040783,
25 BANGKOK REGISTERED PLATE NUMBER: 5 KOR
   KAI TOR TUNG – 1923 BANGKOK,
26
   MINI COOPER, BANGKOK REGISTERED PLATE
27 NUMBER: 5 KOR KAI PHOPHAN – 2319 BANGKOK,

28

                                1

1  BMW MOTORCYCLE, LICENSE PLATE NUMBER: 5
   KOKAI NONEN – 2182 BANGKOK,
2
   ALL MONIES, FUNDS, AND CREDITS ON DEPOSIT
3  AT BANGKOK BANK, HELD IN THE NAME OF
   ALEXANDRE CAZES, INCLUDING BUT NOT
4  LIMITED TO ACCOUNTS 228-2-15349-9, 228-2-15092-5
   and 033-0-79683-0,
5
   ALL MONIES, FUNDS, AND CREDITS ON DEPOSIT
6  AT BANGKOK BANK, HELD IN THE NAME OF
   SUNISA THAPSUWAN, INCLUDING BUT NOT
7  LIMITED TO ACCOUNT 935-7-00049-7,

8  ALL MONIES, FUNDS, AND CREDITS ON DEPOSIT
   AT BANK OF AYUDHYA (KRUNGSRI), HELD IN THE
9  NAME OF ALEXANDRE CAZES, INCLUDING BUT
   NOT LIMITED TO ACCOUNT 7241012818,
10
   ALL MONIES, FUNDS, AND CREDITS ON DEPOSIT
11 AT KASIKORN BANK, HELD IN THE NAME OF
   BITCOIN COMPANY LTD., INCLUDING BUT NOT
12 LIMITED TO ACCOUNT 797-223495-2,

13 ALL MONIES, FUNDS, AND CREDITS ASSOCIATED
   WITH ALEXANDRE CAZES AND SUNISA
14 THAPSUWAN'S VIRTUAL CURRENCY EXCHANGE
   ACCOUNTS WITH BITCOIN COMPANY LTD. IN
15 THAILAND, WHICH ARE ON DEPOSIT WITH
   BITCOIN COMPANY LTD.,
16
   ALL MONIES, FUNDS, AND CREDITS ON DEPOSIT
17 AT KASIKORN BANK, HELD IN THE NAME OF
   ALEXANDRE CAZES, INCLUDING BUT NOT
18 LIMITED TO ACCOUNTS 007-8-49384-4 and 007-3-
   86968-4,
19
   ALL MONIES, FUNDS, AND CREDITS ON DEPOSIT
20 AT KASIKORN BANK, HELD IN THE NAME OF
   SUNISA THAPSUWAN, INCLUDING BUT NOT
21 LIMITED TO ACCOUNT 073-2-53870-4,

22 ALL MONIES, FUNDS, AND CREDITS ON DEPOSIT
   AT SIAM COMMERCIAL BANK, HELD IN THE NAME
23 OF ALEXANDRE CAZES, INCLUDING BUT NOT
   LIMITED TO ACCOUNTS 156-1-12047-0 and 156-2-
24 73157-5,

25 ALL MONIES, FUNDS, AND CREDITS ON DEPOSIT
   AT SIAM COMMERCIAL BANK, HELD IN THE NAME
26 OF SUNISA THAPSUWAN, INCLUDING BUT NOT
   LIMITED TO ACCOUNT 192-2-06800-9,
27

28
                                    2
                          *Amended* Verified Complaint for Forfeiture *In Rem*

ALL MONIES, FUNDS, AND CREDITS ON DEPOSIT AT BANK ALPINUM AG IN LIECHTENSTEIN, HELD IN THE NAME OF ALEXANDRE CAZES,

ALL MONIES, FUNDS, AND CREDITS ON DEPOSIT AT LOYAL BANK LIMITED, HELD IN THE NAME OF "BRILLIANT LANDMARK CONCEPT LIMITED" AND/OR ALEXANDRE CAZES,

ALL MONIES, FUNDS, AND CREDITS ASSOCIATED WITH ALEXANDRE CAZES' AND/OR SUNISA THAPSUWAN'S VIRTUAL CURRENCY EXCHANGE ACCOUNTS WITH BITCOIN SUISSE AG IN BAAR, SWITZERLAND,

REAL PROPERTY LOCATED AT 514, SOI 28 OFF PHUTTA MONTHON SAI 3 ROAD KHWAENG SALA THAMMASOP, KHET THAWEE WATTHANA, BANGKOK,

REAL PROPERTY LOCATED AT 522, SOI 28 OFF PHUTTA MONTHON SAI 3 ROAD KHWAENG SALA THAMMASOP, KHET THAWEE WATTHANA, BANGKOK,

REAL PROPERTY LOCATED AT VILLA TORCELLO, 28/18 MOO 6, KAMALA, KATHU, PHUKET 83150, THAILAND,

REAL PROPERTY LOCATED AT 1399/8 GRANADA PIN KLAO-PHET KASEM HOUSING ESTATE, KANCHANA PHISK ROAD, KHWAENG BANG KHAE NUA, KHET BANG KHAE, BANGKOK, THAILAND,

REAL PROPERTY LOCATED AT VILLA 1 AT THE SEA PEARL RESIDENCES, PARALIMNI FAMAGUSTA, CYPRUS,

REAL PROPERTY LOCATED AT #302 NONSUCH BAY CONDOMINIUMS (C-200080017, LOT #9), ST. PHILLIPS SOUTH, ANTIGUA AND BARBUDA,

APPROXIMATELY 1,605.0503851 BITCOINS SEIZED FROM ALEXANDRE CAZES AND MOVED TO SECURE GOVERNMENT-CONTROLLED BITCOIN ADDRESSES: 18YWFVDDQNRGE966ZWXTPYJGYJGR82SVMS (837.81699505 BTC) and 1NXOCQLQQGAQU2CPBGTXTZ8NVM1CGNYD6P (721.76756789 BTC),

*Amended* Verified Complaint for Forfeiture *In Rem*

1   APPROXIMATELY 8,309.271639 ETHEREUM SEIZED
FROM ALEXANDRE CAZES AND MOVED TO

2   SECURE GOVERNMENT-CONTROLLED ETHER
ADDRESS:

3   0X41CC3B9213DE6FF4A8EA85306326B00D18145E65,

4   APPROXIMATELY 3,691.98 ZCASH SEIZED FROM
ALEXANDRE CAZES AND MOVED TO SECURE

5   GOVERNMENT-CONTROLLED ADDRESS
T1UAR3J9HYT1OCMYGSSLR7S3PLMUKBONGLG,

6

7   ANY AND ALL MONERO SEIZED FROM
ALEXANDRE CAZES' PERSONAL COMPUTER AND
WALLET ADDRESSES,

8

9   APPROXIMATELY 293.79476862 BITCOIN MOVED
FROM SERVER 3203 INTO SECURE GOVERNMENT-
CONTROLLED BITCOIN ADDRESS

10  1BBTK41STWUFFTFVRRSOVX7X8PUHDPFOFK,

11  APPROXIMATELY 43.05943697 BITCOIN MOVED
FROM SERVER 3164 INTO SECURE GOVERNMENT-

12  CONTROLLED BITCOIN ADDRESS
1BBTK41STWUFFTFVRRSOVX7X8PUHDPFOFK,

13

14  APPROXIMATELY 360.384477 ETHEREUM MOVED
FROM SERVER 8131 INTO SECURE GOVERNMENT-
CONTROLLED  ETHER ADDRESS

15  0X356114879F72F4BFFB343B0003DEED7944B4D31D,

16  APPROXIMATELY 11,993.15882 MONERO MOVED
FROM SERVER 10073 INTO SECURE GOVERNMENT-

17  CONTROLLED MONERO ADDRESS
47GSEO9DJCZFSYRPIJJ1QPLKSEPFJNOBA6MUTQXA

18  W6XBVZ6GWEKGYAQF2PDBHM5FXUFOZLWYPCX
K2FMYZ29BWMZBKHXQKZO,

19

20  ANY AND ALL CRYPTOCURRENCY CONTAINED IN
WALLET FILES RESIDING ON ALPHABAY SERVERS,
INCLUDING THE SERVERS ASSIGNED THE

21  INTERNET PROTOCOL ADDRESSES:
XX.XXX.XX.146 ("Server 11205"), XX.XXX.XXX.163

22  ("Server 6223"), XXX.XXX.XXX.225 ("Server 3203a"),
XXX.XXX.XXX.61 ("Server 3203b"), XXX.XXX.XXX.77

23  ("Server 3164"), XX.XXX.XXX.130 ("Server 8131"),
XX.XXX.XX.168 ("Server 10073"), and

24

25  ANY AND ALL CRYPTOCURRENCY SEIZED FROM
THE PERSONAL COMPUTER, WALLET ADDRESSES,
AND MEDIA OF ALEXANDRE CAZES,

26

            Defendants-in-rem.

27

28

*Amended* Verified Complaint for Forfeiture *In Rem*

The United States of America, by and through its attorney, Phillip A. Talbert, United States Attorney for the Eastern District of California, for its *amended* verified complaint alleges, upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This action is brought by the United States of America pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and (C), seeking the forfeiture of all the assets involved in, and traceable to, the ownership and operation of the AlphaBay illegal marketplace by ALEXANDRE CAZES ("CAZES"), including the following:

   a. 2013 Lamborghini Aventador LP700-4, VIN: ZHWEC1476CLA01032, Bangkok Registered Plate Number: 4 Kor Kai Tor Tung – 3620 Bangkok,

   b. Porsche Panamera S, VIN: WP0ZZZ97ZGL040783, Bangkok Registered Plate Number: 5 Kor Kai Tor Tung – 1923 Bangkok,

   c. Mini Cooper, Bangkok Registered Plate Number: 5 Kor Kai Phophan – 2319 Bangkok,

   d. BMW Motorcycle, License Plate Number: 5 Kokai Nonen – 2182 Bangkok,

   e. All monies, funds, and credits on deposit at Bangkok Bank, held in the name of Alexandre CAZES, including but not limited to accounts 228-2-15349-9, 228-2-15092-5 and 033-0-79683-0,

   f. All monies, funds, and credits on deposit at Bangkok Bank, held in the name of Sunisa THAPSUWAN, including but not limited to account 935-7-00049-7,

   g. All monies, funds, and credits on deposit at Bank of Ayudhya (Krungsri), held in the name of Alexandre CAZES, including but not limited to account 7241012818,

   h. All monies, funds, and credits on deposit at Kasikorn Bank, held in the name of Bitcoin Company Ltd., including but not limited to account 797-223495-2,

   i. All monies, funds, and credits associated with Alexandre CAZES and Sunisa THAPSUWAN's virtual currency exchange accounts with Bitcoin Company Ltd. in Thailand, which are on deposit with Bitcoin Company Ltd.,

   j. All monies, funds, and credits on deposit at Kasikorn Bank, held in the name of Alexandre CAZES, including but not limited to accounts 007-8-49384-4 and 007-3-86968-4,

   k. All monies, funds, and credits on deposit at Kasikorn Bank, held in the name of Sunisa THAPSUWAN, including but not limited to account 073-2-53870-4,

   l. All monies, funds, and credits on deposit at Siam Commercial Bank, held in the name of Alexandre CAZES, including but not limited to accounts 156-1-12047-0 and 156-2-73157-5,

m.   All monies, funds, and credits on deposit at Siam Commercial Bank, held in the name of Sunisa THAPSUWAN, including but not limited to account 192-2-06800-9,

n.   All monies, funds, and credits on deposit at Bank Alpinum AG in Liechtenstein, held in the name of Alexandre CAZES,

o.   All monies, funds, and credits on deposit at Loyal Bank Limited, held in the name of "Brilliant Landmark Concept Limited" and/or Alexandre CAZES,

p.   All monies, funds, and credits associated with Alexandre CAZES' and/or Sunisa THAPSUWAN's virtual currency exchange accounts with Bitcoin Suisse AG, in Baar, Switzerland,

q.   Real property located at 514, Soi 28 off Phutta Monthon Sai 3 Road Khwaeng Sala Thammasop, Khet Thawee Watthana, Bangkok,

r.   Real property located at 522, Soi 28 off Phutta Monthon Sai 3 Road Khwaeng Sala Thammasop, Khet Thawee Watthana, Bangkok,

s.   Real property located at Villa Torcello, 28/18 Moo 6, Kamala, Kathu, Phuket 83150, Thailand,[1]

t.   Real property located at 1399/8 Granada Pin Klao-Phet Kasem Housing Estate, Kanchana Phisk Road, Khwaeng Bang Khae Nua, Khet Bang Khae, Bangkok, Thailand,[2]

u.   Real property located at Villa 1 at the Sea Pearl Residences, Paralimni Famagusta, Cyprus,

v.   Real property located at #302 Nonsuch Bay Condominiums (C-200080017, LOT #9), St. Phillips South, Antigua and Barbuda,[3]

w.   Approximately 1,605.0503851 Bitcoins seized from Alexandre CAZES and moved to secure government-controlled Bitcoin addresses: 18yWFVddqNrGE966zwXTpyJgYJgr82SvMs (837.81699505 BTC) and 1NXoCQLQqgaQU2cpBGtXTZ8NVm1cGnYD6p (721.76756789 BTC),

x.   Approximately 8,309.271639 Ethereum seized from Alexandre CAZES and moved to secure government-controlled Ether address: 0x41CC3B9213DE6FF4a8Ea85306326B00D18145E65,

y.   Approximately 3,691.98 Zcash seized from Alexandre CAZES and moved to secure government-controlled address t1UAr3j9Hyt1oCMygsSLr7S3pLMuKBoNgLg,

z.   Any and all Monero seized from Alexandre CAZES' personal computer and wallet addresses,

aa.   Approximately 293.79476862 Bitcoin moved from server 3203 into secure government-controlled Bitcoin address 1BBTk41STWuffTfvRrsovX7X8puhDpFofk,

---

[1] The Phuket property subject to forfeiture is fully described in Exhibit B attached hereto.
[2] The Granada property subject to forfeiture is fully described in Exhibit C attached hereto.
[3] The Antigua and Barbuda property subject to forfeiture is fully described in the Certificate of Title, attached hereto as Exhibit D.

6

*Amended* Verified Complaint for Forfeiture *In Rem*

bb.     Approximately 43.05943697 Bitcoin moved from server 3164 into secure government-controlled Bitcoin address 1BBTk41STWuffTfvRrsovX7X8puhDpFofk,

cc.     Approximately 360.384477 Ethereum moved from server 8131 into secure government-controlled Ether address 0x356114879f72f4bFFB343B0003DEED7944B4D31d,

dd.     Approximately 11,993.15882 Monero moved from server 10073 into secure government-controlled Monero address 47gSEo9DJCZfsYrPijJ1QpLksePfjNoBA6mUtQXAW6xBVz6GwEkgYaQf 2PDBhm5fXUfozLWYpCxK2FmyZ29bWmZBKhXqKZo,

ee.     Any and all cryptocurrency contained in wallet files residing on AlphaBay servers, including the servers assigned the internet protocol addresses: XX.XXX.XX.146 ("Server 11205"), XX.XXX.XXX.163 ("Server 6223"), XXX.XXX.XXX.225 ("Server 3203a"), XXX.XXX.XXX.61 ("Server 3203b"), XXX.XXX.XXX.77  ("Server 3164"), XX.XXX.XXX.130 ("Server 8131"), XX.XXX.XX.168 ("Server 10073 "), and

ff.     Any and all cryptocurrency seized from the personal computer, wallet addresses, and media of Alexandre CAZES.  (Collectively referred to as "defendant assets").

2.      This Court has jurisdiction over this action pursuant to Title 28, United States Code, Sections 1355(a), (b)(1) and (b)(2), and Title 18, United States Code, Section 981.

3.      Venue is proper pursuant to Title 28, United States Code, Sections 1355(b)(2) and 1395(a), and Title 18, United States Code, Section 981(h).  Since 2016, law enforcement agents participating in this investigation have made multiple undercover purchases of controlled substances, fake identification documents, and other items illegal in the United States from AlphaBay vendors, including purchases made from, and illegal items shipped to, the Eastern District of California.  The payments for these illegal items represent racketeering proceeds based on their connection to the AlphaBay marketplace, as well as being involved in money laundering transactions through AlphaBay and accounts (and real properties) controlled by CAZES and his wife in Thailand, Liechtenstein, Cyprus, Switzerland, and Antigua and Barbuda ("Antigua").  In addition, AlphaBay vendors resided in the Eastern District of California, resulting in illegal items purchased on AlphaBay being shipped from the Eastern District of California to locations around the United States.

**FACTUAL OVERVIEW**

4.      As detailed below, from December 2014, up to and including July 2017, the AlphaBay hidden website served as a marketplace for illegal goods—selling malware, controlled substances,

chemicals, guns, stolen financial information and counterfeit documents to its users located all over the world.  AlphaBay was the largest dark web market and its annual sales were estimated to be in the hundreds of millions of dollars, many times more than Silk Road, a predecessor dark web marketplace that primarily sold controlled substances and was shut down by the government in 2013.

5.       The AlphaBay website was designed to facilitate the illicit commerce hosted on the site by providing anonymity to its users, in two primary ways.  First, the AlphaBay hidden website operated on the dark web accessible only through The Onion Router ("TOR") network, a special network of computers on the Internet designed to conceal the true IP addresses of the computers on the network. Second, AlphaBay required its users to transact in cryptocurrencies, also referred to as digital currencies, such as Bitcoin, Monero and Ethereum.  As explained below, cryptocurrency such as Bitcoin exists entirely on the Internet, is not inherently stored in any physical form, and is designed to be as anonymous as cash.

6.       An individual named ALEXANDRE CAZES, a/k/a "Alpha02," a/k/a "Admin," founded AlphaBay in 2014 and was its leader through July 4, 2017.  CAZES, as the founder, oversaw AlphaBay's operations since its inception and has controlled the massive profits generated from the operation of the business, collecting tens of millions of dollars in commissions from the illegal transactions facilitated by AlphaBay.  CAZES has always been aware of the illegal nature of his enterprise—in 2014 he posted in the "About Me" section of AlphaBay that the site was "launched in September 2014 and its goal is to become the largest eBay-style underworld marketplace."  CAZES added that AlphaBay was the only darkweb marketplace with "a bidding system in place," and encouraged users to "head over to the forums" if they had trading issues.  CAZES concluded his post with:  "happy trading!"

7.       Throughout its operation, CAZES has sought to ensure the anonymity of the illegal vendors on AlphaBay, as well as to conceal his own identity as the owner and operator of the site. AlphaBay's day-to-day operations were run by a staff of 8-10 individuals that operate through anonymous monikers, including:

    a.  A "Security Administrator," who appears to had administrator-level access
        similar, or possibly equal, to Alpha02/Admin, and who uses the moniker

8

"DeSnake."

b. Several "Moderators," who reviewed and moderated disputes among vendors and buyers.  The moderators had the ability to change users' PIN numbers, have discretion to refund buyers' Bitcoin if they concluded the dispute required it, had visibility into staff-only discussion forums, and could view all AlphaBay users' Bitcoin balances at any moment.  The Moderators included: "Raspi," "Disc0," "Russ0," "Botah," "BigMuscles," and "MountainHigh9" (retired).

c. A "Public Relations" manager using the moniker "Trappy," who managed outreach to the broader dark market community by posting on public forums such as Reddit, as well as on the AlphaBay forum.

d. "ScamWatch" personnel using the monikers "Onionhood" and "Vaas," who watched out for phishing attempts and other scams against other AlphaBay users on AlphaBay.

8.     Each of these staff members had elevated permissions on AlphaBay and access to portions of the site that are not available to the average users.  Each was paid a salary through the site for his or her work administering AlphaBay.

9.     AlphaBay was modeled after conventional e-commerce websites.  In exchange for a vendor fee, users could establish vendor profiles and offer goods for sale online.  These vendor pages were visible to buyers and often listed introductory information the vendor chooses to post in addition to his/her online moniker (e.g., ship-from location, gender, PGP encryption public key, etc.), as well as the vendor's product listings, reviews from previous customers, and "trust level" and "vendor level"—metrics which appeared to be assigned by AlphaBay based on the vendor's length of time on the site, total number of sales, number of disputed transactions and/or reviews, and other factors.  Below is a screenshot of the illegal AlphaBay marketplace shortly before the site was taken down:

9

10.    As of June 2017, there were approximately 369,000 listings for the sale of various categories of illicit goods on the AlphaBay website, including such hosted categories as "Fraud," "Drugs & Chemicals," "Counterfeit items,"  "Weapons," and "Software and Malware."  AlphaBay also had a section where users could purchase stolen credit cards and financial information, as well as stolen personal identifying information—even offering specific search controls to allow potential buyers to search the listings by location (city, state and country), social security number, birth year, credit limit, PIN number, seller, seller level, price, and more.

11.    AlphaBay also advised buyers and vendors on how to avoid law enforcement detection and explicitly acknowledged that the site's activities were illegal.  Not only were the goods and services offered on AlphaBay overwhelmingly illegal on their face, but the illicit nature of the commerce conducted on the website was openly recognized in the AlphaBay online community and on the site itself.  For example, information available on AlphaBay provided guidance to users concerning how to conduct transactions on the site without being caught by law enforcement.  AlphaBay's Frequently Asked Questions, accessible from the home page, listed the question "Is AlphaBay Market Legal?"  The website then explained:

*Amended* Verified Complaint for Forfeiture *In Rem*

Some people have really asked this question.  Of course not.  We are an anonymous marketplace selling drugs, weapons and credit cards.  Make sure you access the website through Tor or through a VPN to ensure anonymity.  We take no responsibility if you get caught, so protecting yourself is your responsibility.

12.     The AlphaBay website further hosted a platform for users to post public electronic messages relating to AlphaBay and its criminal activities, known as the Forum, as well as to send direct messages to other users.  Much like on the marketplace, conversations on AlphaBay were categorized by topic.  For example, the Forum offered a section called "Listing Reviews" which organizes conversation threads under various sub-categories, including "fraud sellers," "malware/exploits/software sellers," "weapons sellers," "drugs sellers," "hosting/security/spam/traffic sellers."  The forum also had entire sections dedicated to "carding & fraud," "drugs discussions," "industry news" (which discussed, among other things, law enforcement actions against dark markets vendors and marketplaces), and more.

13.     During its operation, AlphaBay charged a commission for every transaction conducted by its users.  The commission rate varied based on the seller's history, volume, and trust level on the site, but generally varied from 2-4%.  AlphaBay also offered a referral program whereby a user received a portion of the commission earned from users referred to the site, thereby encouraging existing users to introduce new users to the site and increase the sales volume.  In addition, AlphaBay kept the value of Bitcoin or other cryptocurrency left behind by users who were banned from the site or otherwise abandoned their AlphaBay accounts.

14.     AlphaBay only allowed its users to transact in digital currencies, such as Bitcoin, Monero and Ethereum, but Bitcoin was the preferred digital currency for AlphaBay users.  Instead of being issued by a government, bank, or company, digital currency is generated and controlled through computer software operating on a decentralized peer-to-peer network.  Bitcoin payments are recorded on a public ledger that is maintained by peer-to-peer verification, known as the "Blockchain."  Accordingly, no single administrator or entity controls the verification of Bitcoin transactions, unlike say a bank, which clears financial transactions for customers.

15.     Individuals can acquire Bitcoins by "mining" or by purchasing them from other individuals.  An individual can "mine" for Bitcoin by allowing their computing power to be used to verify and record Bitcoin transactions.  A "miner" is rewarded for this by being given newly created

*Amended* Verified Complaint for Forfeiture *In Rem*

Bitcoins.  Individuals can send Bitcoins through peer-to-peer online transactions or through third-party payment processors.  Further, Bitcoins are stored on digital "wallets," which essentially store the access code (known as a "private key") that allows individuals to conduct Bitcoin transactions on the Blockchain.  Even though the public addresses associated with Bitcoin transactions are recorded on the Blockchain, the true identities of the transactors are not recorded.  If, however, a real individual or entity is linked to a public address, it would be possible to determine what transactions were conducted by the individual or entity controlling that public address.  Bitcoin transactions are, therefore, not entirely anonymous.

16.     Transactions on AlphaBay occurred through cryptocurrencies hosted and controlled by the site.  To purchase illegal goods and services, users transferred funds into the site's cryptocurrency addresses, where the funds were held in escrow until the transactions were completed.  After a transaction was completed, and AlphaBay took its approximate 2-4 percent cut, users could send their cryptocurrencies to private addresses not controlled by the site.  Because cryptocurrency transactions can in theory be traced (e.g., through the Blockchain), "tumblers" and "mixers" could be used to obscure the historical trail of the cryptocurrencies' movements.  Mixers and tumblers obscure transaction histories by combining, splitting and re-combining Bitcoins through a series of wallets controlled by the tumbler or mixer.  According to postings on AlphaBay, the site introduced a tumbler in approximately April 2016.  One such posting stated:

> Alphabay can now safely be used as a coin tumbler! This means that no level of blockchain analysis can prove that your coins come from Alphabay since we use our own obfuscation technology. Making a deposit and withdrawing after is now a way to tumble your coins and break the link to the source of the funds. Since tumbling is not illegal, and since we leave no paper trail, you now have ironclad plausible deniability with your Bitcoins.

17.     Between May of 2016 and when the site was taken down, law enforcement agents participating in this investigation made numerous undercover purchases of controlled substances (marijuana, heroin, fentanyl, and methamphetamine), fake identification documents and an ATM skimmer from AlphaBay vendors, including purchases made from, and substances and other illegal items shipped to, the Eastern District of California.  Samples of the controlled substances purchases have been laboratory-tested and have typically shown high purity levels of the drug item was

advertised to be on the AlphaBay website.  Based on the postal markings on the packages in which the drugs and illegal items arrived, these purchases appear to have been filled by vendors located across the country—the investigation has also revealed cocaine and marijuana AlphaBay vendors residing in the Eastern District of California.

### ALEXANDRE CAZES: ALPHABAY'S FOUNDER AND OPERATOR

18.     In the course of this investigation, law enforcement agents identified CAZES as "Alpha02" and "Admin," the founder and administrator of AlphaBay.  According to AlphaBay's FAQs, "AlphaBay Market . . . [was] founded by alpha02, reputable member on most carding forums … [a]fter some time helping others on carding forums, he decided to start his own marketplace and allow sellers from around the world to sell goods to buyers worldwide."  Early pages of the AlphaBay site listed a "copyright" mark indicating that the site was "proudly designed by Alpha02."

19.     From the site's launch in December 2014 through August 2015, Alpha02's public profile on AlphaBay listed him as "Administrator & Owner" of the site.  It also stated that "Alpha02" joined the site on July 14, 2014, which pre-dated the public launch of the website by approximately six months. Alpha02's profile signature block also indicated that he accepted "private messages from staff only." Until August 2015, Alpha02 was also a prolific author of posts on the AlphaBay forums and his posts were tagged with the "administrator" designation, indicating that Alpha02 had site ownership privileges.

20.     In August 2015, the username for the AlphaBay administrator account changed from "Alpha02" to "Admin."  Around the same time, Alpha02 posted a message on the AlphaBay forum stating, "alpha02 account will be renamed to 'Admin'. This account will ONLY accept private messages from Staff."  The AlphaBay profile for Admin at the time of the takedown showed that it was the same account previously labeled "Alpha02" and that the moniker was simply changed.  Admin has been a member since July 27, 2014, and as described below, evidence located at the time of CAZES' arrest confirmed that CAZES continued using the Admin profile after August 2015.

21.     In December 2016, law enforcement learned that CAZES' personal email was included in the header of AlphaBay's "welcome email" to new users in December 2014.  Specifically, soon after AlphaBay was launched, the site established an associated online forum allowing customers and vendors

to discuss their business.  One feature of the sign-up process was new users had to provide an email address for password recovery in case the user lost his/her password.  Once new users joined the forums and entered their private email accounts, they were greeted with an email directly from AlphaBay welcoming them to the forums.  The email address of "Pimp_Alex_91@hotmail.com" was included in the header information of the AlphaBay welcome email.

22.     CAZES' personal email was also included in the header of AlphaBay's "password recovery process" used by AlphaBay forum users who lost their passwords.  In late December of 2014 when users initiated a password recovery for the AlphaBay forums, they received an email from AlphaBay directing them to a link to reset their password.  As with the welcome email, the header of the reset email had a sender email address of "Pimp_Alex_91@hotmail.com."

23.     Law enforcement subsequently learned the "Pimp_Alex_91@hotmail.com" email address belonged to a Canadian man named Alexandre CAZES with a birthdate of October 19, 1991, matching the numeric identifier in his Hotmail email address.  CAZES was a self-described independent website designer affiliated with a company called EBX Technologies ("EBX Tech").  Law enforcement reviewed the LinkedIn profile for "Alexandre Cazes," which identified CAZES as an employee for EBX Tech with the following IT skills: concurrent programming, web hosting, email hosting, web development, network administration, server administration, network security, graphic design, custom software development, web application design, cryptography, software architectural development, database design, and database administration.  It also listed additional IT skills and proficiencies as: Eclipse, Java, Java Script, Linux, Oracle (Cloud Computing), SSL Certificates (required for encryption key), VB.NET and ASP.NET (used for visual/website software framework), MySQL and PostgreSQL (used for open source database management systems), HTML, PHP and CSS (script/markup language used in web development).

24.     Law enforcement also learned about a December 3, 2008 post on the online tech forum "www.commentcamarche.com" by user with the name of "Alpha02."  The "Alpha02" user posted information in French on how to properly remove a virus from a digital photo.  At the end of the post, the "Alpha02" user included his name, "Alexandre Cazes," and his email address, "Pimp_Alex_91@hotmail.com."  Law enforcement authorities then confirmed that Alexandre Cazes

was a Canadian citizen residing in Thailand.

25.     Law enforcement has also uncovered additional facts indicating that CAZES was "Alpha02," including financial transaction information linking CAZES to AlphaBay and financial records indicating that CAZES had many millions of dollars' worth of investments throughout the world without any lawful source.  Additionally, CAZES was logged into the AlphaBay website as "Admin" on July 5, 2017 when law enforcement searched his residence, and was in active communication with one of the AlphaBay data centers about a law enforcement-created service outage on the site.  Finally, passwords to AlphaBay's servers and other infrastructure were found on CAZES' personal computer at his residence, as described below.

26.     Law enforcement further determined that CAZES owned and controlled EBX Technologies, a front company he used to justify his banking activity and substantial cryptocurrency holdings.  EBX Technologies claims to provide web design services, but the website for EBX Technologies is barely functional and does not appear to support any substantial business operations. Although EBX Technologies appears to have been created in 2008, the blog for the website has not been updated since January 2015.  A review of EBX Tech's current bank records show little to no business income or banking activity.  In the years before his arrest, CAZES maintained several bank accounts in the name of "EBX Technologies" and used these "business" bank accounts to create digital exchange accounts so he could liquidate and manage his cryptocurrency.

27.     Law enforcement obtained CAZES' PayPal account records that show several accounts registered in CAZES' name.  To open and maintain one PayPal account, CAZES listed email addresses "contact@ebxtech.com" and "pimp_alex_91@hotmail.com."  On other accounts, CAZES listed the email address "admin@ebxtech.com."  PayPal account statements further show that CAZES made regular payments to the RooshV forum (an online discussion forum) for his membership fee—CAZES routinely posted on RooshV about his financial success and expertise with cryptocurrency.  CAZES' PayPal account was also linked to his other bank accounts, including a Canadian bank account held in CAZES' name and EBX Technologies.

*Amended* Verified Complaint for Forfeiture *In Rem*

**RELATED CRIMINAL CASE**

28.    On or about June 1, 2017, the United States District Court for the Eastern District of California issued a warrant for Alexandre CAZES' arrest based upon an Indictment in case number 1:17-CR-00144-LJO-SKO, charging CAZES with sixteen criminal counts, including conspiracy to engage in a racketeer influenced corrupt organization, in violation of Title 18, United States Code, Section 1962(d); conspiracy to violate the narcotics laws of the United States in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), (b)(1)(C), & 846; conspiracy to commit identity theft and access device fraud in violation of Title 18, United States Code, Sections 1028(f) and 1029(b)(2); unlawful transfer of a false identification document in violation of Title 18, United States Code, Sections 1028(a)(2), (b)(1)(A)(ii), & (f); trafficking in device making equipment in violation of Title 18, United States Code, Sections 1029(a)(4), (b)(1), and (c)(1)(A)(ii); and conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h).  The Indictment against CAZES further sought to forfeit all the assets connected to the criminal organization known as AlphaBay.  *See United States v. Alexandre Cazes*, 1:17-CR-00144-LJO-SKO, Docket No. 1.

29.    The Indictment in summary alleged:

a.    Defendant ALEXANDRE CAZES, aka "ALPHA02," aka "ADMIN," and others known and unknown to the Grand Jury, were members and associates of a criminal organization, hereafter, the "ALPHABAY ORGANIZATION," whose members engaged in acts of: drug trafficking; trafficking in counterfeit and stolen identification documents, counterfeit goods, unauthorized access devices, device-making equipment, and malware and other computer hacking tools; illegal firearms distribution; and money laundering, and whose members interfered with interstate and foreign commerce through acts of: drug trafficking; trafficking in counterfeit and stolen identification documents, counterfeit goods, unauthorized access devices, and device-making equipment, and malware and other computer hacking tools; illegal firearms distributions; and money laundering.  Members and associates of the ALPHABAY ORGANIZATION operated throughout the world, including in Bangkok, Thailand, and in the Counties of Fresno and Merced … within the State and Eastern District of California.

b.    The purposes of the enterprise included … to create, maintain, and control a dark-web marketplace for trafficking in narcotics, counterfeit and stolen identification documents, unauthorized access devices, counterfeit goods, device-making equipment, malware and other computer hacking tools, illegal firearms, and other illegal goods and services, and to launder the proceeds of

16

*Amended* Verified Complaint for Forfeiture *In Rem*

such conduct; to enrich the leaders, members, and associates of the enterprise by taking a commission from each illegal transaction conducted through the dark-web marketplace created, maintained, and controlled by the enterprise;  to promote and enhance the reputation and standing of the enterprise and its leaders, members, and associates; to preserve and protect the enterprise's profits and client base through acts of money laundering; and to protect the enterprise and its leaders, members, and associates from detection, apprehension, and prosecution by law enforcement, and from attacks by enemies, such as hackers and rival dark-web marketplaces.

c.  Defendant CAZES created and founded the ALPHABAY ORGANIZATION and its online platform, which included the AlphaBay Market and the AlphaBay Market Forum.  CAZES began creating the AlphaBay online platform in or around July 2014, and, with other persons, known and unknown to the Grand Jury, publicly launched the site in or around December 2014.  CAZES served as the leader of the managers and operators of the criminal organization, who, collectively, controlled the destiny of the enterprise … CAZES had ultimate control of the ALPHABAY ORGANIZATION, including its membership. CAZES had final authority to delete the accounts of moderators, vendors, and buyers on the website and forum.  CAZES also had final authority in settling disputes among moderators, vendors, and other users of the website.  CAZES was ultimately responsible for the website's operational security and technology updates.  CAZES controlled the ALPHABAY ORGANIZATION's earnings, which derived primarily from a commission it made on every transaction occurring through the website.  He also had final control over salary payments to the staff members in the ALPHABAY ORGANIZATION, which were made in digital currencies, such as Bitcoin.

30.  A true and correct copy of the Criminal Indictment against CAZES is attached hereto as Exhibit A and is incorporated by reference as if fully set forth herein.

## SEIZURE WARRANTS

31.  On June 20, 2017, the Honorable Allison Claire, Magistrate Judge for the Eastern District of California, issued twelve seizure warrants for a luxury vehicle and eleven bank and cryptocurrency exchange accounts representing the unlawful proceeds of the criminal enterprise known as AlphaBay. [4] Federal agents obtained the warrants after tracing a number of Bitcoin transactions originating with AlphaBay to digital currency accounts, and ultimately bank accounts and other tangible assets, held by CAZES and his wife.  CAZES concealed and disguised funds obtained illicitly through AlphaBay by commingling the criminal proceeds in digital currency exchange accounts and bank accounts controlled

_____

[4] Set forth specifically in paragraphs 1(e)-(n) above.

*Amended* Verified Complaint for Forfeiture *In Rem*

by CAZES and his wife, and using an automated mixing and tumbling procedure designed to conceal the source of the criminal funds when converting Bitcoin (and other cryptocurrencies) to currency.

32.     The warrants sought the seizure of assets connected to CAZES in Thailand, Liechtenstein, and the Republic of Cyprus where CAZES pursued economic citizenship by purchasing expensive real property in the country.  The economic citizenship effort required CAZES to move money through Bank Alpinum AG in Liechtenstein and hire a citizenship consultant in Cyprus.  In Thailand, where CAZES lived with his wife, law enforcement identified numerous bank and digital exchange accounts connected to CAZES containing ill-gotten proceeds from the operation of AlphaBay.  CAZES used the digital exchange accounts to liquidate his cryptocurrency, most often Bitcoin, to currency so that he could freely spend it in Thailand and other countries on luxury cars, real estate holdings, and other assets.

**JULY 5th ARREST AND SEARCH IN THAILAND**

33.     On July 5, 2017, the Royal Thai Police executed an arrest warrant for Alexandre CAZES, as well as a search warrant, with assistance from the FBI and DEA, at his primary residence in Bangkok, Thailand.  At the time of his arrest, law enforcement discovered CAZES' laptop open and in an unencrypted state.  The laptop was in CAZES' bedroom and logged into the server that hosted the AlphaBay website—CAZES was logged in under the username "Admin" and had accessed the data center hosting the AlphaBay site in order to execute a reboot command after AlphaBay went offline as a result of a law enforcement-created service outage.  In addition to being logged into the AlphaBay server as "Admin," CAZES' computer was also logged into the AlphaBay forums as "Admin," replying to comments from AlphaBay users.

34.     With the computer unlocked and unencrypted, the Royal Thai Police, FBI and DEA searched CAZES' computer and found several open text files that identified the passwords/passkeys for the AlphaBay website, all of the AlphaBay servers, and other online identities associated with AlphaBay.  As a result of the password discovery, law enforcement seized all the information and cryptocurrency on the AlphaBay servers.

35.     The Royal Thai Police, FBI and DEA also discovered a file on CAZES' computer that identified the value and location of CAZES's assets obtained from AlphaBay.  The document was

modeled after a personal financial statement—listing "TOTAL NET WORTH" in bold at the top of the document. Below the net worth heading, CAZES broke down his "holdings" into various subcategories such as ""Asset holdings," "Cash holdings," as well as by each distinct cryptocurrency (e.g., Bitcoin, Ethereum, Monero, and Zcash) and method of storage. According to his financial statement, CAZES had a net worth of $23,033,975.

36.     Under the "Assets" heading of the document, CAZES identified ten vehicles and real properties that he valued at more than $12.5 million. CAZES' own list of hard assets matched up with law enforcement's understanding of CAZES' purchases of luxury vehicles and foreign real estate. CAZES identified several real estate holdings in Thailand, including the residence searched by law enforcement and the adjacent villa he purchased for his in-laws.[5]   CAZES also identified a vacation property he purchased in Phuket, Thailand, and a new home being built in the Granada Pinklao-Phetkasem housing estate in Bangkok, Thailand, as well as luxury foreign properties in Antigua and Cyprus, the latter where he was attempting to obtain economic citizenship by purchasing expensive real property in the country. Cyprus allows for the purchase of citizenship with a direct investment of at least €2 million in real estate and law enforcement intercepted a package CAZES sent to Cyprus indicating he transferred €2.38 million to a bank in Cyprus for the purchase of a villa in that country. CAZES previously obtained economic citizenship in Antigua based on a $400,000 investment in Antiguan beachfront property that qualified for the country's citizenship by investment program.

37.     The "Assets" portion of CAZES' document also identified the luxury vehicles he purchased and drove in Thailand, where the cost is double or triple the cost of comparable vehicles in the United States or Europe. CAZES identified a "Lambo," meaning a Lamborghini, which he purchased for over $900,000, a "Mini" Cooper his wife used valued at $81,000, and a BMW motorcycle worth $21,000.[6] CAZES identified a fourth luxury vehicle worth $292,957, which corresponds to his

---

[5] Law enforcement searched CAZES' primary residence located at 514 Soi 28 off Phutta Monthon Sai 3 Road, Khewaeng Sala Thammasop, Khet Thawee Watthana, Bangkok ("Defendant Residence"). CAZES also purchased the adjacent villa at 522 Soi 28 off Phutta Monthon Sai 3 Road, where his in-laws reside ("Defendant In-Law Villa").

[6] At least one of the vehicles identified on CAZES' financial document was registered in his wife's name. CAZES' wife is a self-described researcher at an academic institution, but the investigation has revealed CAZES's wife's bank and digital currency accounts were involved in the transfer and maintenance of

*Amended* Verified Complaint for Forfeiture *In Rem*

RooshV postings about his acquisition of a Porsche Panamera in or about May 2016.  In the RooshV postings, CAZES boasted to fellow RooshV users about recently buying a Porsche Panamera and, in response, fellow users challenged CAZES' claims of wealth and ownership.  In an effort to authenticate his Porsche ownership, CAZES posted the specific details of his negotiations with the car dealer and sent a video of himself driving the Porsche to the RooshV user who challenged his ownership.  In addition, law enforcement observed CAZES driving the Porsche in Thailand, the Porsche was registered in his name in Thailand, and the vehicle was parked at his primary residence on July 5, 2017.

38.     CAZES' financial statement next identified "Banks" and categorized his bank holdings by the first initial of each Thai financial institution:  "K" for "Kasikorn Bank," "B" for "Bangkok Bank," and "S" for "Siam Bank."  Each abbreviation identified a balance that matched law enforcement's analysis of CAZES' bank holdings in Thailand.  Written below the Thai bank accounts and balances were CAZES' foreign bank accounts, including an account in Switzerland containing $781,000 and several accounts at Loyal Bank Limited, a private offshore bank located in St. Vincent and the Grenadines.

39.     CAZES' financial statement identified cash holdings of over $770,000 and $6.5 million in cryptocurrency.  Similar to the bank abbreviations, CAZES abbreviated his cryptocurrency holdings— "BTC" for Bitcoin, "ETH" for Ethereum, "XMR" for Monero, and "ZEC" for Zcash.  Law enforcement took steps to preserve pending formal seizure all of CAZES' cryptocurrency after discovering a text file on his computer that listed offline wallet addresses for his Bitcoin, Ethereum, Monero, and Zcash.  Written next to these wallet addresses were the "private keys" that allowed law enforcement to unlock the controls and move the cryptocurrency within each wallet address to a secure government-controlled address.  In total, from CAZES' wallets and computer agents took control of approximately $8,800,000 in Bitcoin, Ethereum, Moreno, and Zcash, broken down as follows:  1,605.0503851 Bitcoin,

---

millions of dollars in criminal proceeds from AlphaBay.  At this time, law enforcement have not identified a legitimate source for the assets obtained by CAZES and his wife, including any assets held in CAZES' wife's name.  However, the investigation has revealed that between May 2015 and February 2017, Bitcoin addresses associated with AlphaBay conducted approximately 4,023,480 transactions, receiving approximately 839,087 Bitcoin and sending approximately 838,976 Bitcoin. This equals approximately US$450 million in deposits to AlphaBay.  CAZES's 2-4% commission on Bitcoin transactions likely conducted with those funds would equal between $9-18 million, which is consistent with the conclusion that his income derived from AlphaBay.

1    8,309.271639 Ethereum, 3,691.98 Zcash, and an unknown amount of Monero.[7]

2         40.    Law enforcement agents also seized from CAZES' computer documents showing his

3    involvement with the opening of a bank account at Loyal Bank Limited for a company named "Brilliant

4    Landmark Concept Limited."  In a document titled, "Resolution of Board of Directors of Brilliant

5    Landmark Concept Limited" an "attorney-in-fact" authorizes "the Company" to open a bank account at

6    Loyal Bank Limited.  CAZES is identified as "the Company" and sole authorized user of the bank

7    account at Loyal Bank.  The document is dated February 15, 2017.

8

9                    **SEARCH AND SEIZURE OF ALPHABAY SERVERS**

10        41.    During the investigation of AlphaBay and CAZES, law enforcement identified at least five

11   associated servers that hosted AlphaBay cryptocurrency wallets: Servers 3203a/b, 3164, 8131, 10073.

12   Following CAZES' arrest on July 5, 2017, foreign law enforcement, working with the FBI and DEA,

13   seized AlphaBay's servers and the cryptocurrency wallets contained on each server.

14            a.   Server 3203a/b hosted an encrypted container with an unencrypted bitcoin wallet.

15               Server 3203a/b's combined bitcoin wallets contained a total of approximately

16               293.79476862 Bitcoin and more than 283,803 different wallet addresses.

17            b.   Server 3164 hosted Bitcoin Node that included an encrypted container with a bitcoin

18               wallet.  The wallet itself was not encrypted and law enforcement found total of

19               approximately 43.25943697 Bitcoin and more than 60,000 different wallet addresses.

20            c.   Server 8131 hosted an encrypted container that included 3,525 Ethereum keypairs with

21               value.  Law enforcement seized a total amount of 360.384477 Ethereum from the

22               3,525 keypairs found on Server 8131.

23            d.   Server 10073 hosted an encrypted container that included an unencrypted Monero

24               wallet with one address holding a balance of 11,993.15882 Monero.

25

26   [7] 1,605.0503851 Bitcoins are worth approximately $3,613,806.04, 8,309.271639 Ethereum are worth
     approximately $1,695,008.32, 3,691.98, 3,691.98 Zcash are worth approximately $708,788.20, and each
27   Monero coin is worth approximately $35.045323, Coinbase, http://www.coinbase.com, and World Coin
     Index, http://www.worldcoinindex.com (last visited July 19, 2017 at 12:35 pm).  The total seized
28   includes the cryptocurrency seized from AlphaBay servers, as discussed herein.

                                                    *Amended* Verified Complaint for Forfeiture *In Rem*

42.     As explained above, in addition to the cryptocurrency seizures from Servers 3203a/b, 3164, 8131, 10073, law enforcement also seized information and cryptocurrency from IP addresses containing AlphaBay's complete universe of cryptocurrency.

## ECONOMIC CITIZENSHIP SEIZURES

43.     As explained above, CAZES had successfully obtained economic citizenship in at least one country and was in the process of completing a second economic citizenship investment.  The first, in Antigua, involved CAZES completing a citizenship application for Antigua and wiring $400,000 from his account at Bangkok Bank to purchase Villa 302 at Nonsuch Bay Condominiums in St. Phillip's South, Antigua.  The Antiguan government identifies Nonsuch Bay Condominiums, a resort community on the East coast of the Island of Antigua in the Caribbean Sea, as a real estate project qualifying for citizenship by investment.  In exchange for his $400,000 investment, CAZES and his wife were issued Antiguan passports in February 2017.

44.     In April 2017, CAZES mailed a package from Bangkok to Bank Alpinum AG in Liechtenstein.  The package contained a contract and related instructions for the transfer of €3 million to Bank Alpinum AG in Liechtenstein, as well as documents indicating a €2.38 million transfer from CAZES to USB Cyprus for the purchase of a villa in that country.  Cyprus allows for the purchase of citizenship with a direct investment of at least €2 million for the acquisition or development of real estate.  In the "Declaration of Source of Funds" associated with the transaction in Liechtenstein, CAZES identified the funds transfer would originate from his account at Bitcoin Suisse AG in Baar, Switzerland.  To verify his relation to Bitcoin Suisse AG and the details of payment from the account, CAZES declared his occupation was a "Real estate / Bitcoin invest[or]" and a "customer" of the bank who "sen[t] them Bitcoins, and they send USD or EUR wire transfers," exchanging CAZES' cryptocurrency for currency.  CAZES signed the form and "declare[d] the information was true and correct," and his wife signed the Declaration as a "Witness."

45.     Following a review of the contents of CAZES' package, law enforcement verified that CAZES made three wire transfer payments to Henley and Partners Cyprus Ltd (€714.00), M.C. Corporate Services Ltd (€6,087.00), and Idania Enterprises Ltd (€4,000.00).  Each transaction

corresponded to CAZES's efforts to obtain economic citizenship in Cyprus—payments for a travel consultant, to create a holding company for the property purchased to obtain economic citizenship in Cyprus, and corporate services for CAZES' holding company (naming a Registered Office, Corporate Secretary, Nominee Director, and Nominee Shareholder).  Additionally, when he made the wire transfers, CAZES had written instructions on how to begin the purchase of Villa 1 located at the Sea Pearl Residences in Cyprus.  One document was a printout of an email from CAZES' travel consultant identifying the amounts to wire transfer to Cyprus to begin the villa purchase, including instructions that CAZES must provide "the seller" with €4,000.00 to open the transaction.

## FIRST CLAIM FOR RELIEF
### 18 U.S.C. § 981 (a)(1)(A)

46.     Paragraphs one to forty-five above are incorporated by reference as though fully set forth herein.

47.     The defendant assets are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A), because they were involved in violations of Title 18, United States Code, Section 1956(h), which makes it an offense to conspire to commit money laundering, specifically, in violation of sections 1956(a)(1)(B)(i) and 1957 of Title 18, United States Code.

48.     Pursuant to Title 18, United States Code, Section 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956 or 1960 … of [Title 18], or any property traceable to such property," is subject to forfeiture.

49.     Pursuant to Title 18, United States Code, Section 1956, commonly known as the "money laundering" statute, a person who:

> (a) (1) … knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the
>
>  proceeds of specified unlawful activity—
>
> (A)     (i)   with the intent to promote the carrying on of specified unlawful activity; or
>
> (ii)   with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

(B)  knowing that the transaction is designed in whole or in part—

(i)   to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii)   to avoid a transaction reporting requirement under State or Federal law,

shall be guilty of a crime.

50.    Title 18, United States Code, Section 1956(h) further provides that "[a]ny person who conspires to commit any offense defined in this section [1956] or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."  For purposes of Section 1956, "specified unlawful activity" includes, among other things, violations of federal drug laws, Title 21, United States Code, Section 841(a)(1).  Title 18, United States Code, Section 1957 provides that person commits a crime when s/he "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity."

51.    By reason of the above, the defendant assets are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF
### 18 U.S.C. § 981 (a)(1)(C)

52.    Paragraphs one to forty-five above are incorporated by reference as though fully set forth herein.

53.    The defendant assets are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), because they represent criminal proceeds, or property traceable thereto, of violations of Title 18, United States Code, Section 1962, which makes it an offense to be associated with any enterprise that conducts racketeering activity, Title 18, United States Code, Sections 1028(f) and 1029(b)(2), conspiracy to commit identity theft and access device fraud, Title 18, United States Code, Sections 1028(a)(2), (b)(1)(A)(ii), & (f), unlawful transfer of a false identification document, Title 18, United States Code, Sections 1029(a)(4), (b)(1), and (c)(1)(A)(ii), trafficking in device making

equipment, and 21 U.S.C. §§ 841, violations of the Controlled Substances Act.

54.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation" of any offense constituting "'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense[.]"

55.     Pursuant to Title 18, United States Code, Section 1956(c)(7), the term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of this title."

56.     Pursuant to Title 18, United States Code, Sections 1961(1) and (5), the term "racketeering activity" includes violations of 18 U.S.C. § 1028 (fraud in connection with identification documents), 18 U.S.C. § 1029 (fraud in connection with access devices), and 18 U.S.C. §§ 1956, 1957 (money laundering); and 21 U.S.C. §§ 841, 843, and 846 (drug trafficking, use of a communication facility, and conspiracy).

57.     By reason of the above, the defendant assets are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as criminal proceeds.

### THIRD CLAIM FOR RELIEF
(21 U.S.C. § 881(a)(6))

58.     Paragraphs one to forty-five above are incorporated by reference as though fully set forth herein.

59.     The defendant assets are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), because they were furnished and intended to be furnished in exchange for a controlled substance or listed chemical, constituted proceeds traceable to such an exchange, and were used and intended to be used to commit or facilitate a violation of 21 U.S.C. §§ 841, *et seq*., an offense punishable by more than one year's imprisonment.

### PRAYER FOR RELIEF

WHEREFORE, the United States prays that:

1.     Process issue according to the procedures of this Court in cases of actions *in rem;*

2.     Any person having an interest in said defendant assets be given notice to file a claim and

1   to answer the complaint;

2       3.      This Court enter a judgment of forfeiture of the defendant assets to the United States; and,

3       4.      The Court grant such other relief as may be proper.

4

5   DATED:  __7/26/2017__                          PHILLIP A. TALBERT
                                                   United States Attorney
6

7                                          By: _/s/ Kevin C. Khasigian_____
                                               KEVIN C. KHASIGIAN
8                                              Assistant U.S. Attorney

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Amended* Verified Complaint for Forfeiture *In Rem*

**VERIFICATION**

I, John T. Rabaut, hereby verify and declare under penalty of perjury that I am a Special Agent with the Drug Enforcement Administration, that I have read the foregoing *Amended* Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the *Amended* Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and belief are in the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.


Date: __7-26-17__                                    /s/ John T. Rabaut_____
                                                     JOHN T. RABAUT
                                                     Special Agent
                                                     Drug Enforcement Administration

                                                     (Signature retained by attorney)

*Amended* Verified Complaint for Forfeiture *In Rem*