McGREGOR W. SCOTT
United States Attorney
GRANT B. RABENN
PAUL A. HEMASATH
KEVIN C. KHASIGIAN
Assistant U. S. Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000

KENNETH A. BLANCO
Acting Assistant Attorney General
Criminal Division, United States Justice Department
LOUISA K. MARION
Trial Attorney
Computer Crime and Intellectual Property Section
Washington, DC 20530
Telephone: (202) 514-1026

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>ALEXANDRE CAZES,<br>a/k/a "ALPHA02,"<br>a/k/a "ADMIN,"<br><br>          Defendant,<br><br>2013 LAMBORGHINI AVENTADOR LP700-4,<br>VIN: ZHWEC1476CLA01032, BANGKOK<br>REGISTERED PLATE NUMBER: 4 KOR KAI<br>TOR TUNG – 3620 BANGKOK, ET AL.,<br><br>          Defendants-in-rem. | 1:17-CV-00967-LJO-SKO<br><br>DECLARATION OF JENNIFER SANCHEZ IN SUPPORT OF *EX PARTE* MOTION FOR DEFAULT JUDGMENT AND FINAL JUDGMENT OF FORFEITURE |

I, JENNIFER SANCHEZ, declare as follows:

1. I am a Special Agent employed by the U. S. Drug Enforcement Administration ("DEA") and have been so employed for over thirty years. I was trained as a DEA Special Agent at the DEA/FBI

1

Academy, Quantico, Virginia. During my training, I received special training in the Controlled Substance Act, Title 21 United States Code, including, but not limited to, Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations respectively.

2. I have personal knowledge of the following matters, except those stated on information and belief, and as to those matters I believe them to be true, and if called as a witness in this proceeding, after being duly sworn, I could and would competently testify thereto.

3. The Cyprus property transaction finalized in mid-2017 and Hatrox Ltd. took ownership of the Villa at Sea Pearl Residences in Cyprus. Alexandre Cazes created Hatrox Ltd to hold title/manage his $2 million condominium in Cyprus, which he purchased to qualify for the country's citizenship by investment program. Attached as <u>Exhibits A and B</u> are the Trust Deed and Contract for Sale for the Cyprus Condo, which establish: (1) Alexandre Cazes as the sole beneficiary of Hatrox Ltd., and (2) Hatrox Ltd. purchased the Cyprus Condo from Idania Enterprises in April 2017.

4. Alexandre Cazes hired an economic citizenship consultant to obtain foreign citizenship in at least six countries located in the Caribbean and Eastern Mediterranean. The foreign countries reviewing his citizenship applications required Cazes to explain the origin of his wealth and, in response, Cazes drafted a document that explained his Bitcoin ("BTC") portfolio and creation of various "offshore" nominee companies to hold and manage his properties and bank accounts, including KGYJ Management Limited and Ace Guide Holdings. Cazes explained that he used his "BTC holdings" to purchase the villa in Phuket, Thailand, his wife's house in Bangkok, Thailand (and installed her as the "owner"), the Antiguan condo, and intended to use "4,200 BTC' to purchase the Condo in Cyprus. The "Clarification of BTC Holdings for Alexandre Cazes" is attached as <u>Exhibit C</u>.

5. Nonsuch Management Limited is the affiliated developer and property manager of the defendant Antiguan condominium purchased by Cazes for $400,000 using funds from his Bangkok Bank account in Thailand.

6. I have reviewed documents from Cazes' computer showing his involvement and ownership of a company named "Brilliant Landmark Concept Limited." In a document titled, "Resolution of Board of Directors of Brilliant Landmark Concept Limited" an "attorney-in-fact"

2

Declaration of Jennifer Sanchez

authorizes "the Company" to open a bank account at Loyal Bank Limited.  Cazes is identified as "the Company" and sole authorized user of the bank account at Loyal Bank.  The document is dated February 15, 2017.  Cazes also used Brilliant Landmark Concept Limited to finance and hold nominal title to his home being built in the Granada Pinklao-Phetkasem housing estate in Bangkok, Thailand.  I have reviewed documents showing Cazes structured the transaction so Yaman Properties Co. Limited took legal title to the property and Brilliant Landmark Concept Limited supplied the funds to purchase the property.

      7.     Cazes hired a Thai law firm to create Yaman Properties Co. Limited to allow him to complete the purchase and control title (*through Brilliant Landmark Concept Limited*) to his home being built in Bangkok, Thailand.

     I declare under penalty of perjury that the foregoing is true and correct.  Executed this  1   day of June 2018.

                                   /s/ Jennifer Sanchez
                                   JENNIFER SANCHEZ
                                   DEA Special Agent

                                 (Signature retained by attorney)

# EXHIBIT A

## TRUST DEED

**THIS DEED OF TRUST** is made the 5th April 2017 **BETWEEN** Mr. Cazes Alexandre, Passport No. HG 098007, 98/181 Pruklada Village, 1 Anamai Ngam Charoen, Tha Kham, Bang Khun Thian, Bangkok 10150 (hereinafter called "the Beneficiary") of the one part, and M.C. Corporate Services Ltd Reg No:358683, 59, Archiepiskopou Makariou III, Mouyias Tower, 3rd Floor, Office 301, 6017, Larnaca, Cyprus (hereinafter called "the Trustee") of the other part.

**WHEREAS:-**

(a) The Beneficiary for consideration given is as from the 5th April 2017 beneficially interested and entitled to One Thousand (1000) fully paid up shares (hereinafter called "The Shares") of the nominal value of €1, each, in the undertaking called **HATROX LTD** a company incorporated in Cyprus with registration no.368012, (hereinafter called "the Company") now held by the Trustee.

(b) The Beneficiary is entitled to have the said shares registered in its name forthwith but for reasons of its own it does not wish to exercise at present its such right, and as a result the said shares will continue to be registered in the name of the Trustee, who has accepted to have so registered the said shares in its name.

**NOW THIS DEED** made in pursuance and in consideration of the above **WITNESSETH** as follows:-

1. The Beneficiary hereby declares and directs that the Trustee shall hold the said shares upon the following trusts:-

    (a) Upon trust either to retain the said shares or at the direction of the Beneficiary, to transfer same in the name of the Beneficiary or, at the direction of the Beneficiary, to transfer the said shares or any of them under terms and to the person or persons indicated by the Beneficiary and to pay the proceeds of any sale of them, if any are collected by the Trustee, to the Beneficiary.

    (b) To pay over to the Beneficiary any dividend becoming payable in respect of the said shares or any other amount to which the holder of such shares would be otherwise entitled to, either during the existence of the Company or upon its winding up and so long as the Trustee shall continue to appear as the registered holder of the said shares or any part thereof.

    (c) To exercise any other right or power, in consultation and in accordance with the instructions of the Beneficiary, with regard to the said shares, (not otherwise specifically provided for herein), which right or power may be exercised by the holder of such shares at the material time, including any right or power with regard to the allotment of new shares the issue of bonus shares, the distribution of any property of the Company in specie or otherwise. Any shares obtained by the Trustee because of the



holding of the said shares shall be held again by the Trustee upon the same trusts as herein provided.

(d) To attend, exercise all available rights and vote at any General Meeting of the Company, in respect of the said shares, preferably after consultation with the Beneficiary, but in any case, in a manner not prejudicial to the interests of the Beneficiary and/or not against any prior written instructions of the Beneficiary.

(e) Generally to act with respect to the holding of such shares in a manner not prejudicial to the interests of the Beneficiary and/or not against any prior written instructions of the Beneficiary.

(f) To supply the Beneficiary promptly with notices or other documents notified by the Company to its shareholders.

(g) Subject as aforesaid to hold the said shares in trust for the Beneficiary absolutely.

(h) This trust comes to an end when the said shares cease to be registered in the name of the Trustee, as above, for any reason whatsoever and in conformity with the terms herein contained.

2. The Trustee does hereby agree and declare to hold and have the said shares registered in its name subject to the conditions aforesaid.

**IN WITNESS WHEREOF** we have hereunto set our respective signatures this 5th April 2017

**THE WITNESSES:**

**THE PARTIES:**

Cazes-Alexandre

M.C.M.C. Corporate Services Ltd

# EXHIBIT B

## CONTRACT OF SALE OF VILLA



This Agreement is made today the 7th day of April, 2017

**BETWEEN:**

**Messrs. IDANIA ENTERPRISES LIMITED**, of 5, Soteras Street, Zefkas Bld, 2nd floor, Flat 1-2, 5286, Paralimni, Cyprus, a private limited liability company incorporated in Cyprus with registration number HE352090 (hereinafter called the "**VENDOR**), of the one part which expression includes their successors in title deed, executors, administrators and heirs

**AND**

**Messrs. HATROX LTD** of 59, Arch Makarios III Street, MOUYIAS TOWER, Floor 3, Flat 301, 6017, Larnaca, Cyprus, a private limited liability company incorporated in Cyprus with registration number HE368012 (hereinafter called the "**PURCHASER**") of the other part, which expression includes their successors in title deed, executors, administrators, heirs and permitted assigns.

**RECITALS:-**

**WHEREAS** the **VENDOR** is the sole registered owner of the plot of land under registration number 0/2256, Plot 226, Sh/Pl 2-293-372, Section 8, area 2.264 square meters, located at Ammos tou Kambouri, Ayia Napa District of Famagusta, Cyprus as per the attached as **Appendix 1** Title Deeds (hereinafter referred to as the "**LAND**") and

**WHEREAS** the **VENDOR** applied for the issuance of the Town Planning Permit no AMX/00207/2016 on the 03/06/2016 for the development of the **LAND** through the construction of a building complex of 2 (Two) Villas called "SEA PEARL RESIDENCES", a copy of which is attached as **Appendix 2**

**WHEREAS** the **VENDOR** have agreed to sell to the **PURCHASER** and the **PURCHASER** have agreed to buy from the **VENDORS** Villa number 1 marked with red colour in the attached as **Appendix 3** site plan (hereinafter referred to as the "**PROPERTY**") for the consideration and under the terms hereinafter appearing

**WHEREAS** the **VENDOR** shall construct and deliver the **PROPERTY**, as per the Architectural Drawings and Technical Specifications attached to this Present Agreement as **Appendix 4** and **Appendix 5**

**WHEREAS** the **VENDOR** wishes to sell to the **PURCHASER** and the **PURCHASER** wishes to buy from the **VENDOR** the **PROPERTY** under the terms and conditions contained herewithin

**NOW IT IS HEREBY AGREED BETWEEN THE PARTIES THAT THIS AGREEMENT WILL BE GOVERNED BY THE FOLLOWING TERMS AND CONDITIONS:**

**PRELIMINARY**

All recitals and statements of facts and representations set forth in the preamble above and all attachments and Appendices hereto form an integral and material part of this Agreement.

Page 1 of 10



## PROPERTY UNDER SALE

2.1. The **VENDOR** hereby sells to the **PURCHASER** and the **PURCHASER** hereby purchases from the **VENDOR** Villa number 1, to be constructed on the plot of land under registration number 0/2256, Plot 226, Sh/Pl 2-293-372, Section 8, area 2.264 square meters, located at Ammos tou Kambouri, Ayia Napa District of Famagusta, Cyprus. The **PROPERTY** shall be consisted of an open kitchen, dining room, living room, three bedrooms, swimming pool, roof garden and other spaces.

2.2. The **VENDOR** hereby undertakes to construct the **PROPERTY** according to the Planning Permit and Building Permit to be issued, the terms of the Architectural Drawings, and according to the Technical Specifications. The dimensions stated on the Architectural Drawings are as accurate as possible.

2.3. If so requested by the relevant authorities, minor alterations to the said Technical Specifications and Architectural Drawings may be effected without altering the external envelope and structure design of the **PROPERTY** during the construction stage.

## SELLING PRICE AND MODE OF PAYMENT

3.1. Subject to the terms and conditions of this Agreement, the **VENDOR** agrees to sell to the **PURCHASER** and the **PURCHASER** agrees to buy the **PROPERTY** from the **VENDOR**, free from any mortgage, encumbrance, charge or any other obligation whatsoever.

3.2. The **VENDOR** agrees to sell and the **PURCHASER** agrees to buy the **PROPERTY** at the Purchase Price of €2.000.000,00 (Two Million Euros) plus 19% VAT [€380.000,00] {Three Hundred Eighty Thousand Euros} total of €2.380.000,00 (Two Million Three Hundred Eighty Thousand Euros) (hereinafter called the "PURCHASE PRICE") which will be paid by the **PURCHASER** to the **VENDOR** simultaneously with the deposition of the present agreement to the District Land Office of Famagusta for specific performance purposes pursuant to the Sale of Land (Specific Performance) Law No. 81(I)/2011.

## DELIVERY OF THE PROPERTY

4.1. The **PROPERTY** will be fully completed and delivered to the Purchaser within a period of 18 (Eighteen) months from the date of full settlement of the **PURCHASE PRICE** with 2 (two) months grace period.

4.2. If due to labour dispute, strikes, communal disturbances, riots, governmental restrictions which might be related or affect the construction work or due to war, extraordinary bad weather or damage from fire, delay in receiving materials or equipment from abroad or for any other reason whatsoever which cannot be reasonably foreseen by the **VENDOR** or due to force majeure or other causes beyond the control of the **VENDOR**, the **PROPERTY** is not completed within the time specified above, the **VENDOR** shall not bear any responsibility but they will undertake to proceed with the completion of the construction work and will be entitled to reasonable extension of the delivery time.

4.3. It is agreed that in the event that any changes in the Technical Specifications and/or the Architectural Drawings are agreed between the Parties of this Agreement, the time of delivery of the **PROPERTY** will be extended accordingly.

## GUARANTEE

The **VENDOR** shall for a period of 12 (twelve) months as from the date of delivery of the **PROPERTY** be responsible to make good any faults or defects in the **PROPERTY** which are due to bad craftsmanship or defective construction on the part of the **VENDOR**. The **VENDOR** shall repair any defective work, defective materials and/or technical errors to the reasonable satisfaction of the **PURCHASER** at their own cost. Any repairs will carry a further 12 month guarantee from the date of their completion. The aforementioned liability of the **VENDOR** will cease to exist if during the aforementioned 12 (twelve) month period the **PURCHASER** or any other third person not related in any way to the **VENDOR** makes amendments and/or repairs and/or in general interfere in any way in the **PROPERTY**.

## INSURANCE

Until the date of delivery of the **PROPERTY** to the **PURCHASER** the **VENDOR** will be under an obligation to insure the **PROPERTY** which will be under construction and from then onwards the **PURCHASER** will be fully responsible to insure the **PROPERTY** against fire, earthquake, flood and in general against any danger with a reputable insurance company.

## PROPERTY TAXES AND OTHER CHARGES

7.1. The **VENDOR** is obliged and undertakes to pay all immovable property taxes and any other taxes which will be due up to the date of completion and delivery of the **PROPERTY** to the **PURCHASER**.

7.2. As from the date of delivery of possession of the **PROPERTY** to the **PURCHASER**, the **PURCHASER** shall be responsible for the payment of all immovable property taxes and generally all taxes, dues and levies related to the **PROPERTY**.

7.3. The **PURCHASER** shall pay the necessary stamp duty on the Agreement.

7.4. Any corporate tax because of the sale will be paid by the **VENDOR**.

## VENDOR'S REPRESENTATIONS

The **VENDOR** represents and warrants to the **PURCHASER** that on the date hereof:

a) The **VENDOR** is the sole registered owner of the **LAND** to which the **PROPERTY** is going to be constructed;
b) The **PROPERTY** is not subject to any agreement or other obligation;
c) The **VENDOR** shall not create, contract or allow the creation of any encumbrance on or affecting the **PROPERTY**;
d) At the signing of the present Agreement the **PROPERTY** is free from any mortgage, encumbrance, charge or any other obligation and no action or liability in respect of the **PROPERTY** is outstanding;

Page 3 of 10



e) No order has been made or resolution passed for the winding up of the **VENDOR** and no petition has been presented for the winding up of the **VENDOR** and no receiver, official receiver, receiver and manager, manager, trustee or other similar officer of it has been appointed;

f) That at the time of execution of this agreement, there are no legal or other proceedings pending or threatened against the **VENDOR**;

g) That the **VENDOR** has full power and authority to enter into this agreement and has taken all resolutions and other authorizations as may be required, by its constitutional documents in order to enter into this Agreement and to perform their obligations thereunder.

## SPECIAL TERMS

9.1. The **PURCHASER** may deposit a copy of this agreement at the relevant Land Registry Office according to the terms of The Sale of Land (Specific Performance) Law No. 81(I)/2011.

9.2. The **VENDOR** shall establish and provide to the **PURCHASER**, at its own expense, electricity, water supply, sewage system and telecommunication services with regards to the **PROPERTY**.

9.3. The **VENDOR** undertakes to issue separate title deeds and that with the issuance of separate title deeds from the Land Registry they will transfer the **PROPERTY** under the name of the **PURCHASER** free from any mortgage, charge encumbrance or third party rights. Provided always that before such transfer the **PURCHASER** will have settled any expenses and/or dues and/or fees and/or levies and/or taxes related to the **PROPERTY** and owed to any authority and/or the **VENDOR** and/or any other third party, that were created after the **PROPERTY** was delivered to the **PURCHASER**.

9.4. The **PURCHASER** shall not, without the previous written consent of the **VENDOR**, install, and/or place, and/ or otherwise erect any satellite antennas, air-condition compressors and/or any fixtures and/or additions of any nature and/or description whatsoever and/or make any extensions and/or alterations which might alter and/or effect the external appearance of the **PROPERTY**.

## NOTICES / CORRESPONDENCE

Any notice required to be given under this agreement shall be in writing and shall be send to the addresses shown above and/or to the fax and/or e-mail address shown below:

(a) PURCHASER: e-mail:
(b) VENDOR: e-mail:

The parties will be under an obligation to notify to each other any change of their address or the above data.

All the above terms and conditions of this Agreement are of essence of this agreement and any party failing to comply with any one of them is liable to pay damages to the other party in addition to any other remedy provided by this Agreement.

Page 4 of 10



Any changes or amendments between the Parties regarding the terms or the purpose or the essence of the Agreement must be done only in writing and signed by both parties.

This Agreement shall be and is deemed to be a Cyprus Contract and shall accordingly be governed by and construed according to the laws of the Republic of Cyprus.

All appendices of this agreement are initialed and constitute an integral part of the agreement.

This Agreement may be executed in multiple counterparts each of which shall be deemed of at least one original, but all of which together shall constitute one and the same instrument and each party received at least a copy.

IN WITNESS WHEREOF the parties hereto or their duly authorized representations have executed this Agreement as of the date first above written.

**WITNESSES**

1. ..............................

2. ..............................

**THE PARTIES**

**The Vendor**

..............................
Chrysostomos Tsitsios of
Memphisco (Nominees) Limited
For and on behalf of
IDANIA ENTERPRISES LIMITED

**The Purchaser**

..............................
Gloria Chrysafi of
M.C. Corporate Services Ltd
For and on behalf of
HATROX LTD

4-4002-2019-005612    28/04/2019

Page 5 of 10

# EXHIBIT C

Bangkok, 25 April 2017

## Clarification of BTC holdings for Alexandre Cazes

This is to clarify my BTC holdings as of 25 April 2017. First of all, on 18th December 2011, I have purchased 15,500 Bitcoins from the now-defunct BTC exchanger Mt. Gox as per the provided statement (my account ID was ▇▇▇▇▇▇ on the exchanger). I kept the coins until they were valued at $900 each, then proceeded to withdraw to external wallets which I control (I didn't feel secure about leaving them in control of Mt. Gox – and my fears were correct, because in 2013, they filed for bankruptcy and disappeared with everyone's money.

I then did various investments with the currency, for example, BTCJam (peer-to-peer lending), and kept hedging the funds and investing. I decided, in 2015, to quit and cash out my earnings. From my initial 15,500 BTC, I had now 18,700 due to the various investments I made and re-purchases at lower prices. Most of them were spent as follow:

- In June 2016, I purchased Villa Torcello in Phuket, Thailand for USD $6,000,000. The BTC price that time was around $600 (cashed out over a 3-month period). **Price: 9,730 BTC.**
- In July 2016, my wife and I applied for citizenship by investment in Antigua & Barbuda (see attached my second passport) by buying a property valued at USD $400,000 plus legal fees. Payment was made in January 2017 during a BTC peak. **Price: 520 BTC.**
- During late 2016, I made various transfers to an offshore Dubai bank account under KGYJ Management's name. I transferred a total of USD 2,500,000. The money is still there and I intend to transfer it to Alpinum Bank if ther are no issues. **Price: 3,000 BTC.**
- In early 2016, I used a Bitfinex account under my wife's name to transfer money to her Thai bank account to purchase a house. The house was valued at USD $250,000. Price: 500 BTC.
- In early 2017, I transferred money from my Bitfinex account to my personal Thai bank account for a future condo purchase (not yet completed). The purchase price will be around USD $300,000. **Price: 400 BTC.**

The above expenses amount to **14,150 BTC**. However, I spend a bit of Bitcoins on sites that accept Bitcoin, such as Cheapair for my flights, Newegg for my computer hardware, etc. So I have around 4,200 BTC left.

I intend to use part of the 4,200 BTC to purchase a property in Cyprus valued at EUR 2,380,000 for the citizenship by investment program. The Bitcoins are in my personal wallet, ready to be sent.

I used four offshore companies:
- The first one, <u>KGYJ Management</u>, was used in order to be able to open an offshore bank account to store funds. The pawment processor is called "AP Wilson", which I have attached the screenshots.
- The second one, <u>Dreamland International</u>, is a company that I do not own. It is owned by ▇▇▇▇ ▇▇▇▇ from Sotheby's realty. We used it during the villa purchase process. The reason is that I wired funds to my Thai bank account before, thinking that I would be able to make a huge outwards wire transfer when it would be time to transfer the USD $6,000,000 for the villa purchase. I transferred funds from both Bitcoin Suisse and my Thai account to the Dreamland account.
- Additionally, we used <u>DFDL</u> account. This is the law firm I used in Singapore to arrange the villa transfer deal. The case was led by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, lawyers specialized in commercial real estate. They offered to Escrow funds for me.
- Finally, the company used to hold the villa was <u>Ace Guide Holdings</u>. I attached the corporate documents for the company and villa purchase. We did not use KGYJ Management because we found

out that my name was showing in the public records as the "founder", and since Thai laws prohibit land ownership by foreigners, we had to find a way to go around this and hide my name. I do not have any funds or bank account for that company, it is simply a shell company used for the villa holding.

The reason I used my wife's name to purchase a $250,000 house is because of the Thai laws prohibiting land ownership by foreigners – we bought the house under her name, therefore the Bitfinex account needed to be in her name.

The reason why I used Dreamland and DFDL accounts for Escrow is that Thai laws prohibit Thai laws forbid outgoing transfers over USD $50,000 without having a brick of paperwork and lots of patience, so the seller offered to let me use the bank account of his offshore company in order to put funds in Escrow which would then be used for the villa purchase. I did several USD 49,000 transfers from my Thai bank account over that period.

Hope everything to your satisfaction.

Alexandre Cazes

25 Apr 2017