**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

2013 LAMBORGHINI AVENTADOR LP700-4, VIN: ZHWEC1476CLA01032, BANGKOK PLATE NUMBER: 4 KOR KAI TOR TUNG, et al.

                Defendants.

_____/

**CASE NO. 1:17-cv-00967-LJO-SKO**

**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S *EX PARTE* MOTION FOR DEFAULT JUDGMENT AND FINAL JUDGMENT OF FORFEITURE BE GRANTED**

(Doc. 53)

**OBJECTIONS DUE WITHIN 14 DAYS**

## I.  INTRODUCTION

In this *in rem* civil forfeiture action, Plaintiff United States of America (the "Government" or "Plaintiff") filed an *Ex Parte* Motion for Default Judgment and Final Judgment of Forfeiture (the "Motion") seeking entry of a default judgment against ten claimants, and a final judgment of forfeiture against all known and unknown potential claimants in the interests of several luxury vehicles, bank accounts, real properties, and millions of dollars in various cryptocurrencies.  The ten known claimants in this matter are Martin Cazes, Danielle Heroux, KGYJ Management Limited, Ace Guide Holding, Brilliant Landmark Concept Limited, Nonsuch Management

1

Limited, Sunisa Thapsuwan (Cazes), The Estate of Alexandre Cazes, Hatrox Limited, and Yaman Properties Co. Limited (collectively "Known Claimants"). (Doc. 53 at 1–2.) Plaintiff seeks a final judgment of forfeiture of the following assets and properties:

1. 2013 Lamborghini Aventador LP700-4, VIN: ZHWEC1476CLA01032, Bangkok Registered Plate Number: 4 Kor Kai Tor Tung – 3620 Bangkok,

2. Porsche Panamera S, VIN: WP0ZZZ97ZGL040783, Bangkok Registered Plate Number: 5 Kor Kai Tor Tung – 1923 Bangkok,

3. Mini Cooper, Bangkok Registered Plate Number: 5 Kor Kai Phophan – 2319 Bangkok,

4. BMW Motorcycle, License Plate Number: 5 Kokai Nonen – 2182 Bangkok,

5. All monies, funds, and credits on deposit at Bangkok Bank, held in the name of Alexandre Cazes, including but not limited to accounts 228-2-15349-9, 228-2-15092-5 and 033-0-79683-0,

6. All monies, funds, and credits on deposit at Bangkok Bank, held in the name of Sunisa Thapsuwan, including but not limited to account 935-7-00049-7,

7. All monies, funds, and credits on deposit at Bank of Ayudhya (Krungsri), held in the name of Alexandre Cazes, including but not limited to account 7241012818,

8. All monies, funds, and credits on deposit at Kasikorn Bank, held in the name of Alexandre Cazes, including but not limited to accounts 007-3-86968-4,

9. All monies, funds, and credits on deposit at Kasikorn Bank, held in the name of Sunisa Thapsuwan, including but not limited to account 073-2-53870-4,

10. All monies, funds, and credits on deposit at Siam Commercial Bank, held in the name of Alexandre Cazes, including but not limited to accounts 156-1-12047-0 and 156-2-73157-5,

11. All monies, funds, and credits on deposit at Siam Commercial Bank, held in the name of Sunisa Thapsuwan, including but not limited to account 192-2-06800-9,

12. All monies, funds, and credits on deposit at Bank Alpinum AG in Liechtenstein, held in the name of Alexandre Cazes,

13. Real property located at 514, Soi 28 off Phutta Monthon Sai 3 Road Khwaeng Sala Thammasop, Khet Thawee Watthana, Bangkok, Thailand,

14. Real property located at 522, Soi 28 off Phutta Monthon Sai 3 Road Khwaeng Sala Thammasop, Khet Thawee Watthana, Bangkok, Thailand,

15. Real property located at Villa Torcello, 28/18 Moo 6, Kamala, Kathu, Phuket 83150, Thailand,

16. Real property located at 1399/8 Granada Pin Klao-Phet Kasem Housing Estate, Kanchana Phisk Road, Khwaeng Bang Khae Nua, Khet Bang Khae, Bangkok, Thailand,

17. Real property located at Villa 1 at the Sea Pearl Residences, Paralimni Famagusta, Cyprus,

18. Real property located at #302 Nonsuch Bay Condominiums (C-20080017, LOT #9), St. Phillips South, Antigua and Barbuda,

19. Approximately 1,605.0503851 Bitcoins seized from Alexandre Cazes and moved to secure government-controlled Bitcoin addresses:
18yWFVddqNrGE966zwXTpyJgYJgr82SvMs (837.81699505 BTC) and
1NXoCQLQqgaQU2cpBGtXTZ8NVm1cGnYD6p (721.76756789 BTC),

20. Approximately 8,309.271639 Ethereum seized from Alexandre Cazes and moved to secure government-controlled Ether address:
0x41CC3B9213DE6FF4a8Ea85306326B00D18145E65,

21. Approximately 3,691.98 Zcash seized from Alexandre Cazes and moved to secure government-controlled address: t1L5QRksQxTXCB1niqp3JEu4fWTZD8W2a94 (formerly described as t1UAr3j9Hyt1oCMygsSLr7S3pLMuKBoNgLg),

22. Any and all Monero seized from Alexandre Cazes' personal computer and wallet addresses,

23. Approximately 293.79476862 Bitcoin moved from server 3203 into secure government-controlled Bitcoin address:

    1BBTk41STWuffTfvRrsovX7X8puhDpFofk,

24. Approximately 43.05943697 Bitcoin moved from server 3164 into secure government- controlled Bitcoin address:

    1BBTk41STWuffTfvRrsovX7X8puhDpFofk,

25. Approximately 360.384477 Ethereum moved from server 8131 into secure government-controlled Ether address:

    0x356114879f72f4bFFB343B0003DEED7944B4D31d,

26. Approximately 11,993.15882 Monero moved from server 10073 into secure government-controlled Monero address:

    47gSEo9DJCZfsYrPijJ1QpLksePfjNoBA6mUtQXAW6xBVz6GwEkgYaQf
    2PDBhm5fXUfozLWYpCxK2FmyZ29bWmZBKhXqKZo,

27. Any and all cryptocurrency contained in wallet files residing on AlphaBay servers, including the servers assigned the internet protocol addresses: XX.XXX.XX.146 ("Server 11205"), XX.XXX.XXX.163 ("Server 6223"), XXX.XXX.XXX.225 ("Server 3203a"), XXX.XXX.XXX.61 ("Server 3203b"), XXX.XXX.XXX.77 ("Server 3164"), XX.XXX.XXX.130 ("Server 8131"), XX.XXX.XX.168 ("Server 10073 "), and

28. Any and all cryptocurrency seized from the personal computer, wallet addresses, and media of Alexandre Cazes.

(collectively, the "Defendant Assets") (Doc. 53, Ex. A). No opposition to the Motion has been filed, and the time to file an opposition has expired. For the reasons set forth below, the undersigned RECOMMENDS that the Government's Motion be GRANTED.

///

///

///

## II. FACTUAL BACKGROUND[1]

### A.    AlphaBay Background

On July 26, 2017, the Government filed a verified first amended complaint alleging that between December 2014 and July 2017, the AlphaBay hidden website served as a marketplace for illegal goods—selling malware, controlled substances, chemicals, guns, stolen financial information and counterfeit documents to its users located all over the world including in the Eastern District of California. (Doc. 3 ("Am. Compl." ¶¶ 3, 4.) An individual named Alexandre Cazes, a/k/a "Alpha02," a/k/a "Admin," founded AlphaBay in 2014 and was its leader through July 4, 2017. (*Id.* ¶ 6.) Cazes oversaw AlphaBay's operations since its inception and controlled the profits generated from the operation of the business, collecting tens of millions of dollars in commissions from the illegal transactions facilitated by AlphaBay. (*Id.*) Cazes was aware of the illegal nature of his enterprise—in 2014, he posted in the "About Me" section of AlphaBay that the site was "launched in September 2014 and its goal is to become the largest eBay-style underworld marketplace." (*Id.*)

AlphaBay was designed to facilitate the illicit commerce hosted on the site by providing anonymity to its users, in two primary ways. (*Id.* ¶ 5.) First, the AlphaBay hidden website operated on the dark web accessible only through "The Onion Router" network, a special network of computers on the internet designed to conceal the true IP addresses of the computers on the network. (*Id.*) Second, AlphaBay required its users to transact in cryptocurrencies, also referred to as digital currencies, such as Bitcoin, Monero, and Ethereum. (*Id.*)

AlphaBay was modeled after conventional e-commerce websites. (*Id.* ¶ 9.) In exchange for a vendor fee, users could establish vendor profiles and offer goods for sale online. (*Id.*) As of June 2017, there were approximately 369,000 listings for the sale of various categories of illicit goods on the AlphaBay website. (*Id.* ¶ 10.) Not only were the goods and services offered on

---

[1] The facts set forth in this factual background section are taken from Plaintiff's verified amended complaint filed July 26, 2017. (Doc. 3.)

AlphaBay overwhelmingly illegal on their face, but the illicit nature of the commerce conducted on the website was openly recognized in the AlphaBay online community and on the site itself. (*Id.* ¶ 11.) For example, information available on AlphaBay provided guidance to users concerning how to conduct transactions on the site without being caught by law enforcement. (*Id.*)

During its operation, AlphaBay charged a commission for every transaction conducted by its users. (*Id.* ¶ 13.) The commission rate varied based on the seller's history, volume, and trust level on the site, and generally ranged from 2–4%. (*Id.*) AlphaBay also offered a referral program whereby a user received a portion of the commission earned from users referred to the site, thereby encouraging existing users to introduce new users to the site and increase the sales volume. (*Id.*) In addition, AlphaBay kept the value of Bitcoin or other cryptocurrency left behind by users who were banned from the site or otherwise abandoned their AlphaBay accounts. (*Id.*)

Transactions on AlphaBay occurred through cryptocurrencies hosted and controlled by the site. (*Id.* ¶ 16.) To purchase illegal goods and services, users transferred funds into the site's cryptocurrency addresses, where the funds were held in escrow until the transactions were completed. (*Id.*) After a transaction was completed, and AlphaBay took its commission, users could send their cryptocurrencies to private addresses not controlled by the site. (*Id.*) Because cryptocurrency transactions can in theory be traced using a public ledger maintained by peer-to-peer verification, "tumblers" and "mixers" could be used to obscure the historical trail of the cryptocurrencies' movements. (*Id.*) Mixers and tumblers obscure transaction histories by combining, splitting and re-combining Bitcoins through a series of wallets controlled by the tumbler or mixer. (*Id.*) According to postings on AlphaBay, the site introduced a tumbler to help users obscure their cryptocurrency transactions in approximately April 2016. (*Id.*)

### B. Law Enforcement's Investigation of AlphaBay and Alexandre Cazes

Between May 2016 and June 2017, United States law enforcement agents made numerous undercover purchases of controlled substances (marijuana, heroin, fentanyl, and methamphetamine), fake identification documents and an ATM skimmer from AlphaBay

vendors, including purchases from, and substances and other illegal items shipped to, the Eastern District of California. (*Id.* ¶ 17.) In the course of their investigation, law enforcement agents identified Alexandre Cazes as "Alpha02" and "Admin," the founder and administrator of AlphaBay. (*Id.* ¶ 18.) According to AlphaBay's FAQs, "AlphaBay Market . . . [was] founded by alpha02, reputable member on most carding forums . . . [a]fter some time helping others on carding forums, he decided to start his own marketplace and allow sellers from around the world to sell goods to buyers worldwide." (*Id.*) In August 2015, the username for the AlphaBay administrator account changed from "Alpha02" to "Admin." (*Id.* ¶ 20.) The AlphaBay profile for Admin at the time the site was taken down showed that it was the same account previously labeled "Alpha02" and that moniker was simply changed. (*Id.*)

In December 2016, law enforcement learned that Cazes' personal email was included in the header of AlphaBay's "welcome email" to new users in December 2014. (*Id.* ¶ 21.) Specifically, soon after AlphaBay was launched, the site established an associated online forum allowing customers and vendors to discuss their business. (*Id.*) One feature of the sign-up process was new users had to provide an email address for password recovery in case the user lost his/her password. (*Id.*) Once new users joined the forums and entered their private email accounts, they were greeted with an email directly from AlphaBay welcoming them to the forums. (*Id.*) The email address of "Pimp_Alex_91@hotmail.com" was included in the header information of the AlphaBay welcome email. (*Id.*) Cazes' personal email was also included in the header of AlphaBay's "password recovery process" used by AlphaBay forum users who lost their passwords. (*Id.* ¶ 22.)

Law enforcement subsequently learned the "Pimp_Alex_91@hotmail.com" email address belonged to a Canadian man named Alexandre Cazes with a birthdate of October 19, 1991. (*Id.* ¶ 23.) Cazes was a self-described independent website designer affiliated with a company called EBX Technologies. (*Id.*) Law enforcement uncovered additional facts indicating that Cazes was "Alpha02," including financial transaction information linking Cazes to AlphaBay and financial records indicating that Cazes had many millions of dollars' worth of investments throughout the

world without any lawful source.  (*Id.* ¶ 25.)  Additionally, Cazes was logged into the AlphaBay website as "Admin" on July 5, 2017, when law enforcement executed a search warrant at his residence, and was in active communication with one of the AlphaBay data centers about a law enforcement-created service outage on the site.  (*Id.*)  Finally, passwords to AlphaBay's servers and other infrastructure were found on Cazes' personal computer at his residence.  (*Id.*)

Law enforcement further determined that Cazes owned and controlled EBX Technologies, a front company he used to justify his banking activity and substantial cryptocurrency holdings.  (*Id.* ¶ 26.)  Although EBX Technologies claims to provide web design services, the website for EBX Technologies is barely functional and does not appear to support any substantial business operations.  (*Id.*)  A review of EBX Technologies' current bank records show little to no business income or banking activity.  (*Id.*)  In the years before his arrest, Cazes maintained several bank accounts in the name of "EBX Technologies" and used these "business" bank accounts to create digital exchange accounts so he could liquidate and manage his cryptocurrency.  (*Id.*)

### C.    Related Criminal Case

On June 1, 2017, the United States District Court for the Eastern District of California issued a warrant for Cazes' arrest based upon an Indictment in *United States v. Alexandre Cazes* case number 1:17–cr–00144–LJO–SKO, charging Cazes with sixteen criminal counts, including conspiracy to engage in a racketeer influenced corrupt organization, in violation of Title 18, United States Code, Section 1962(d); conspiracy to violate the narcotics laws of the United States in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), (b)(1)(C), & 846; conspiracy to commit identity theft and access device fraud in violation of Title 18, United States Code, Sections 1028(f) and 1029(b)(2); unlawful transfer of a false identification document in violation of Title 18, United States Code, Sections 1028(a)(2), (b)(1)(A)(ii), & (f); trafficking in device making equipment in violation of Title 18, United States Code, Sections 1029(a)(4), (b)(1), and (c)(1)(A)(ii); and conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h).  (*Id.* ¶ 28.)  The Indictment against Cazes further sought to

forfeit all the assets connected to the criminal organization known as AlphaBay. (*Id.*) On April 27, 2018, the Court dismissed all sixteen counts of the Indictment following Cazes' death. (*See* Case No. 1:17–cr–00144–LJO–SKO (Docs. 10, 11).)

### D.    Seizure Warrants

On June 20, 2017, a federal judge found probable cause existed to seize a luxury vehicle and eleven bank and cryptocurrency exchange accounts traceable to unlawful proceeds generated from AlphaBay, and issued seizure warrants for those assets located in Thailand. (Am. Compl. ¶ 31.) Law enforcement traced Bitcoin transactions originating with AlphaBay to digital currency accounts, and ultimately bank accounts and other tangible assets, held by Cazes and his wife, Sunisa Thapsuwan. (*Id.*) Cazes concealed and disguised funds obtained illicitly through AlphaBay by commingling the criminal proceeds in digital currency exchange accounts and bank accounts controlled by Cazes and his wife, and using an automated mixing and tumbling procedure designed to conceal the source of the criminal funds when converting Bitcoin (and other cryptocurrencies) to currency. (*Id.*)

The warrants sought the seizure of assets connected to Cazes in Thailand, Liechtenstein, and the Republic of Cyprus where Cazes pursued economic citizenship by purchasing expensive real property in the country. (*Id.* ¶ 32.) In Thailand, where Cazes lived with his wife, law enforcement identified numerous bank and digital exchange accounts connected to Cazes containing ill-gotten proceeds from the operation of AlphaBay. (*Id.*) Cazes used the digital exchange accounts to liquidate his cryptocurrency, most often Bitcoin, to currency, so he could freely spend it in Thailand and other countries on luxury cars, real estate holdings, and other assets. (*Id.*)

### E.    July 5, 2017, Arrest and Search in Thailand

On July 5, 2017, the Royal Thai Police executed an arrest warrant for Alexandre Cazes, as well as a search warrant, with assistance from the FBI and DEA, at his primary residence in Bangkok, Thailand. (*Id.* ¶ 33.) At the time of his arrest, law enforcement discovered Cazes' laptop open and in an unencrypted state. (*Id.*) The laptop was in Cazes' bedroom and logged into

the AlphaBay forums and the server that hosted the AlphaBay website under the username "Admin." (*Id.*)

With the computer unlocked and unencrypted, the Royal Thai Police, FBI and DEA searched Cazes' computer and found several open text files that identified the passwords/passkeys for the AlphaBay website, all of the AlphaBay servers, and other online identities associated with AlphaBay. (*Id.* ¶ 34.) As a result of the password discovery, law enforcement seized all the information and cryptocurrency on the AlphaBay servers. (*Id.*) The Royal Thai Police, FBI and DEA also discovered a file on Cazes' computer that identified the value and location of Cazes' assets obtained from AlphaBay. (*Id.* ¶ 35.) The document was modeled after a personal financial statement—listing "TOTAL NET WORTH" in bold at the top of the document. (*Id.*) Below the net worth heading, Cazes broke down his "holdings" into various subcategories such as "Asset holdings," "Cash holdings," as well as by each distinct cryptocurrency (e.g., Bitcoin, Ethereum, Monero, and Zcash) and method of storage. (*Id.*) According to his financial statement, Cazes had a net worth of $23,033,975. (*Id.*)

Under the "Assets" heading of the document, Cazes identified four vehicles and six real properties that he valued at more than $12.5 million. (*Id.* ¶ 36.) Cazes' own list of hard assets matched law enforcement's understanding of Cazes' purchases of luxury vehicles and foreign real estate. (*Id.*) Cazes identified several real estate holdings in Thailand, including the residence searched by law enforcement and the adjacent villa he purchased for his in-laws. (*Id.*) Cazes also identified a vacation property he purchased in Phuket, Thailand, and a new home being built in the Granada Pinklao-Phetkasem housing estate in Bangkok, Thailand, as well as luxury foreign properties in Antigua and Barbuda ("Antigua") and in Cyprus, where he was attempting to obtain economic citizenship by purchasing expensive real property. (*Id.*) Cyprus allows for the purchase of citizenship with a direct investment of at least €2 million in real estate and law enforcement intercepted a package Cazes sent to Cyprus indicating he transferred €2.38 million to a bank in Cyprus for the purchase of a villa in that country. (*Id.*) Cazes previously obtained economic

citizenship in Antigua based on a $400,000 investment in Antiguan beachfront property that qualified for the country's citizenship by investment program.  (*Id.*)

The "Assets" portion of Cazes' document also identified the luxury vehicles he purchased and drove in Thailand, where the cost is double or triple the cost of comparable vehicles in the United States or Europe.  (*Id.* ¶ 37.)  Cazes identified a "Lambo," meaning a Lamborghini, which he purchased for over $900,000, a "Mini" Cooper his wife used valued at $81,000, a BMW motorcycle worth $21,000, and a Porsche Panamera worth $292,957.  (*Id.*)

Cazes' financial statement next identified "Banks" and categorized his bank holdings by the first initial of each Thai financial institution: "K" for "Kasikorn Bank," "B" for "Bangkok Bank," and "S" for "Siam Bank."  (*Id.* ¶ 38.)  Each abbreviation identified a balance that matched law enforcement's analysis of Cazes' bank holdings in Thailand.  (*Id.*)  Written below the Thai bank accounts and balances were Cazes' foreign bank accounts, including an account in Switzerland containing $781,000 and several accounts at Loyal Bank Limited, a private offshore bank located in St. Vincent and the Grenadines.  (*Id.*)

Cazes' financial statement identified cash holdings of over $770,000 and $6.5 million in cryptocurrency.  (*Id.* ¶ 39.)  Similar to the bank abbreviations, Cazes abbreviated his cryptocurrency holdings—"BTC" for Bitcoin, "ETH" for Ethereum, "XMR" for Monero, and "ZEC" for Zcash.  (*Id.*)  Written next to these wallet addresses were the "private keys" that allowed law enforcement to unlock the controls and move the cryptocurrency within each wallet address to a secure government-controlled address.  (*Id.*)  In total, from Cazes' wallets and computer, agents took control of approximately $8,800,000 in Bitcoin, Ethereum, Moreno, and Zcash, broken down as follows: 1,605.0503851 Bitcoin, 8,309.271639 Ethereum, 3,691.98 Zcash, and an unknown amount of Monero.  (*Id.*)

Cazes' computer also contained documents showing his involvement and ownership of a company named "Brilliant Landmark Concept Limited."  (*Id.* ¶ 40.)  In a document titled, "Resolution of Board of Directors of Brilliant Landmark Concept Limited" an "attorney-in-fact" authorizes "the Company" to open a bank account at Loyal Bank Limited.  (*Id.*)  Cazes is

identified as "the Company" and sole authorized user of the bank account at Loyal Bank.  (*Id.*)  The document is dated February 15, 2017.  (*Id.*)

### F.    Search and Seizure of AlphaBay Servers

Law enforcement also identified and seized certain servers that hosted AlphaBay cryptocurrency wallets including servers 3203a/b, 3164, 8131, 10073 listed in the Defendant Assets.  (*Id.* ¶ 41.)  Server 3203a/b hosted an encrypted container with unencrypted bitcoin wallets containing approximately 293.79476862 Bitcoin.  (*Id.*)  Server 3164 hosted Bitcoin Node that included an encrypted container with a bitcoin wallet.  (*Id.*)  The wallet itself was not encrypted and law enforcement found total of approximately 43.25943697 Bitcoin.  (*Id.*)  Server 8131 hosted an encrypted container that included 3,525 Ethereum keypairs totaling 360.384477 Ethereum.  (*Id.*)  Server 10073 hosted an encrypted container that included an unencrypted Monero wallet with one address holding a balance of 11,993.15882 Monero.  (*Id.*)  In addition to the cryptocurrency seizures from Servers 3203a/b, 3164, 8131, 10073, law enforcement also seized information and cryptocurrency from IP addresses containing AlphaBay's complete universe of cryptocurrency.  (*Id.*)

### G.    Economic Citizenship Seizures

At the time of his arrest, Cazes had successfully obtained economic citizenship in at least one country and was in the process of completing a second economic citizenship investment.  (*Id.* ¶ 43.)  The first, in Antigua, involved Cazes completing a citizenship application for Antigua and wiring $400,000 from his account at Bangkok Bank to purchase Villa 302 at Nonsuch Bay Condominiums in St. Phillip's South, Antigua.  (*Id.*)  The Antiguan government identifies Nonsuch Bay Condominiums as a qualifying real estate project for the country's citizenship by investment program.  (*Id.*)  In exchange for his $400,000 investment, Cazes and his wife were issued Antiguan passports in February 2017.  (*Id.*)

In April 2017, Cazes mailed a package from Bangkok to Bank Alpinum AG in Liechtenstein.  (*Id.* ¶ 44.)  The package contained a contract and related instructions for the transfer of €3 million to Bank Alpinum AG in Liechtenstein, as well as documents indicating a

€2.38 million transfer from Cazes to USB Cyprus for the purchase of a villa in that country. (*Id.*) In the "Declaration of Source of Funds" associated with the transaction in Liechtenstein, Cazes identified the funds transfer would originate from his account at Bitcoin Suisse AG in Baar, Switzerland. (*Id.*) To verify his relation to Bitcoin Suisse AG and the details of payment from the account, Cazes declared his occupation was a "Real estate / Bitcoin invest[or]" and a "customer" of the bank who "sen[t] them Bitcoins, and they send USD or EUR wire transfers," exchanging Cazes' cryptocurrency for currency. (*Id.*) Cazes signed the form and "declare[d] the information was true and correct," and his wife signed the Declaration as a "Witness." (*Id.*)

Following a review of the contents of Cazes' package, law enforcement verified that Cazes made three wire transfer payments to Henley and Partners Cyprus Ltd (€714.00), M.C. Corporate Services Ltd (€6,087.00), and Idania Enterprises Ltd (€4,000.00). (*Id.* ¶ 45.) Each transaction corresponded to Cazes' efforts to obtain economic citizenship in Cyprus—payments for a travel consultant, to create a holding company for the property purchased to obtain economic citizenship in Cyprus, and corporate services for Cazes' holding company (naming a Registered Office, Corporate Secretary, Nominee Director, and Nominee Shareholder). (*Id.*) Additionally, when he made the wire transfers, Cazes had written instructions on how to begin the purchase of Villa 1 located at the Sea Pearl Residences in Cyprus. (*Id.*) One document was a printout of an email from Cazes' travel consultant identifying the amounts to wire transfer to Cyprus to begin the villa purchase, including instructions that Cazes must provide "the seller" with €4,000.00 to open the transaction. (*Id.*)

## III. PROCEDURAL BACKGROUND

On June 1, 2017, a Grand Jury in the Eastern District of California indicted Alexandre Cazes, a/k/a "Alpha02," a/k/a "Admin," for conspiracy to engage in a racketeer influenced corrupt organization, in violation of Title 18, United States Code, Section 1962(d) and 846, and other charges related to his role at AlphaBay. (*Id.* ¶ 28.) On April 26, 2018, the Government moved to dismiss the Indictment following Cazes' death in July 2017. (*see* Case No. 1:17–cr–00144–LJO–

SKO (Doc. 10).)  The Court dismissed all sixteen counts of the Indictment on April 27, 2018.
(*see* 1:17–cr–00144–LJO–SKO (Doc. 11).)

On July 19, 2017, the Government filed a verified civil complaint seeking forfeiture *in rem* pursuant to 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C), and 21 U.S.C. § 881(a)(6) of the Defendant Assets, (Doc. 1), and on July 26, 2017, the Government filed an amended verified complaint on the same grounds, (Doc. 3).  Based on the allegations set forth in the amended complaint, the Clerk of the Court issued a Warrant for Arrest of Articles *In Rem* for the Defendant Assets.  (Doc. 4.)

On August 10, 2017, this Court issued an order authorizing public notice of this forfeiture action for thirty consecutive days on the official internet government forfeiture site www.forfeiture.gov.  (Doc. 7.)  Publication in a manner consistent with this Court's order began on September 27, 2017, and ran for at least thirty consecutive, as required by and Supplemental Rule G(4)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereafter "Supplemental Rules") and Local Rule of the U.S. District Court for the Eastern District of California 500(d).  (Doc. 13.)  Proof of such publication was filed with the Court on October 27, 2017.  (*Id.*)  The Government also caused notice to be delivered to various individuals with a suspected potential interest in the Defendant Assets in a manner reasonably likely to reach them, as follows:

1. On September 29, 2017, the Government mailed Cazes' mother, Danielle Heroux, copies of the amended complaint, notice of complaint, warrant for arrest, application and order for publication, notice of related cases, order setting mandatory scheduling conference, standing order in all civil cases assigned to District Judge Lawrence J. O'Neill, and court notices (hereafter "complaint documents") by Federal Express ("FedEx") delivery to her address in Canada.  (*See* Doc. 53-2, Declaration of Tammy Teglia in Support of *Ex Parte* Motion for Default Judgment and Final Judgment of Forfeiture ("Teglia Decl.") ¶ 4.)   FedEx records show the package was delivered to Danielle Heroux on October 2, 2017.  (*Id.*)

14

2. On September 29, 2017, the Government mailed Alexandre Cazes' father, Martin Cazes, the complaint documents by FedEx delivery to his address in Canada. (*See* Teglia Decl. ¶ 3.) FedEx records show the package was delivered to Martin Cazes on October 3, 2017. (*Id.*)

3. On November 21, 2017, the Government mailed KGYJ Management Limited, Ace Guide Holding, and Brilliant Landmark Concept Limited, the complaint documents by FedEx delivery to their addresses of record in Hong Kong. (*See* Teglia Decl. ¶¶ 5–7.) FedEx records show the package was delivered to the companies on November 24, 2017. (*Id.*) Cazes created KGYJ Management Limited, Ace Guide Holding, and Brilliant Landmark Concept Limited as nominee companies to hold his property and avoid law enforcement detection, including a condo in Cyprus, vacation property in Phuket, Thailand, and new house under construction in Bangkok, Thailand. (*See* Am. Compl. ¶ 40; Doc. 53-1, Declaration of Jennifer Sanchez in Support of *Ex Parte* Motion for Default Judgment and Final Judgment of Forfeiture ("Sanchez Decl.") ¶¶ 4, 6.)

4. On December 19, 2017, Antiguan law enforcement personally served Nonsuch Management Limited, c/o Manager Cameron Fraser, with the complaint documents at Nonsuch Bay Resort, Nonsuch Bay, St. Phillips, Antigua and Barbuda. (Teglia Decl. ¶ 8.) Nonsuch Management Limited is the affiliated developer and property manager of the defendant Antiguan condominium purchased by Cazes for $400,000 using funds from his Bangkok Bank account in Thailand. (Sanchez Decl. ¶ 5.)

5. On December 21, 2017, Thai law enforcement personally served Cazes' wife, Sunisa Thapsuwan (Cazes), in her personal capacity and as Executor of the Estate of Alexandre Cazes, with the complaint documents at her residence in Bangkok, Thailand. (Teglia Decl. ¶ 9–10.)

6. On January 22, 2018, the Government mailed Hatrox Limited, the complaint documents and Minute Order dated October 17, 2017, by FedEx delivery to its address

in Cyprus.  (Teglia Decl. ¶ 11.)  FedEx records show the package was delivered to Hatrox Limited on January 29, 2018.  (*Id.*)  Cazes created Hatrox Limited. to hold title to his $2 million condominium in Cyprus, which he purchased to qualify for the country's citizenship by investment program.  (Sanchez Decl. ¶ 3.)

7. On January 31, 2018, law enforcement personally served Yaman Properties Co. Limited, with the complaint documents.  (Teglia Decl. ¶ 12.)  Cazes created Yaman Properties Co. Limited to hold title to his home being built in the Granada Pinklao-Phetkasem housing estate in Bangkok, Thailand, which he purchased for several million dollars in cash.  (Sanchez Decl. ¶¶ 6–7)

The Government also worked with the governments of Thailand, Antigua, and Cyprus to post copies of the Notice of Verified Complaint for Forfeiture *In Rem* on the real properties purchased by Cazes in each of those respective countries, as follows:

1. On December 19, 2017, notice of this action was posted at #302 Nonsuch Bay Condominiums (C-200080017, LOT #9) in St. Phillips South, Antigua.  (Doc. 27.)

2. On December 21, 2017, notice of this action was posted at 514 and 522 Soi 28 off Phutta Monthon Sai 3 in Bangkok, Thailand.  (Docs. 24–25.)

3. On January 19, 2018, notice of this action was posted at 1399/8 Granada Pin Klao-Phet Kasem Housing Estate, Kanchana Phisk Road, Khwaeng Bang Khae Nua Road Khwaeng Sala Thammasop in Bangkok, Thailand.  (Doc. 37.)

4. On January 22, 2018, notice of this action was posted at Villa Torcello, 28/18 Moo 6, Kamala, Kathu in Phuket, Thailand.  (Doc. 38.)

5. On March 1, 2018, notice of this action was posted at Villa 1 at the Sea Pearl Residences in Paralimni Famagusta, Cyprus.  (Doc. 41.)

Accordingly, Notices of Verified Complaint for Forfeiture *In Rem* have been posted on each of the six real properties identified in the Amended Verified Complaint as required by 18 U.S.C. § 985.  (Docs. 24–25, 27, 37–38, 41.)

Additionally, the Government executed arrest warrants *in rem* for the defendant cryptocurrency in the government's control, the bank account in Liechtenstein, and eleven bank accounts in Thailand. (*See* Docs. 11, 21, 43.) The Government also executed arrest warrants *in rem* for the defendant cryptocurrency from AlphaBay's servers as well as the defendant vehicles being stored in Thailand, which include a 2013 Lamborghini Aventador, a Porsche Panamera, a Mini Cooper, and a BMW motorcycle. (*See* Docs. 46, 52.)

On November 14, 2017, the Clerk of Court entered default against Cazes' parents, Martin Cazes and Danielle Heroux. (Docs. 18–19.) On January 11, 2018, the Clerk of Court entered default against Ace Guide Holding, Brilliant Landmark Concept Limited, and KGYJ Management Limited. (Doc. 29.) On January 31, 2018, the Clerk of Court entered default against Cazes' wife Sunisa Thapsuwan (Cazes), Nonsuch Management Limited, and the Estate of Alexandre Cazes. (Docs. 34–36.) On March 2, 2018, the Clerk of Court entered default against Hatrox Limited (Doc. 42) and on March 23, 2018, the Clerk of Court entered default against Yaman Properties Co. Limited (Doc. 48). Thus, the Clerk of the Court has entered default against all the Known Claimants. The Government filed the present *Ex Parte* Motion for Default Judgment and Final Judgment of Forfeiture on June 1, 2018. (Doc. 54.) No opposition has been filed to the Government's Motion.

## IV. DISCUSSION

### A. Legal Standard

The Government seeks judgment against the interests of the Known Claimants, and also seeks final judgment of forfeiture against all other unknown potential claimants. The Supplemental Rules themselves do not provide a procedure to seek default judgment in an action *in rem*. However, Supplemental Rule A provides: "The Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules."

Federal Rule of Civil Procedure 55(b)(2) provides that a court has discretion to enter default judgment against a party and provides as follows:

> (2) By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

In considering whether to enter default judgment, courts consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the compliant; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of favoring decision on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *United States v. Approximately $30,000.00 in U.S. Currency*, No. 1:13–cv–1542 GSA, 2015 WL 5097707, at *5 (E.D. Cal. Aug. 28, 2015).  *Accord Dundee Cement Co. v. Highway Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

In the context of an *in rem* forfeiture action, a court considering default judgment should also consider the procedural requirements set forth by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983; the Supplemental Rules; and the Court's Local Rules for Admiralty and *in rem* actions.  *See United States v. $191,910.00*, 16 F.3d 1051, 1069 (9th Cir. 1994) (explaining that, because civil forfeiture is a "harsh and oppressive procedure which is not favored by the courts," the Government carries the burden of demonstrating its strict adherence to procedural rules), *superseded by statute on other grounds*.

## B. Procedural Requirements

### 1. Sufficiency of the Complaint

Pursuant to the Supplemental Rules, the Government must file a verified complaint that (1) states the grounds for jurisdiction and venue, (2) describes the property being forfeited including the location of tangible property, (3) identifies the statute under which the forfeiture action is brought, and (4) includes sufficient factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial. *See* Fed. R. Civ. P. Supp. R. G(2). Though the sufficiency of the factual detail of the verified complaint is a higher standard than "notice pleading," it is still a "low bar." *United States v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015). With respect to drug crimes, the Government is not required to show a direct relationship between the proceeds of a drug crime and a specific drug transaction. Rather, circumstantial evidence may support the forfeiture of the proceeds of a drug crime. *See United States v. $30,670.00*, 403 F.3d 448, 467–70 (7th Cir. 2005) (concluding that the totality of the circumstances demonstrated that an airline passenger's cash hoard was connected to drug trafficking and subject to forfeiture); *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (applying totality of the circumstances to determine that cash carried by airline passenger was the proceeds of, or traceable to, an illegal drug transaction); *Approximately $30,000.00 in U.S. Currency*, 2015 WL 5097707, at *6.

Here, the Government filed a verified a complaint and identified the bases for jurisdiction as 28 U.S.C. § 1355(a), (b)(1), (b)(2) and 18 U.S.C. § 981. (Am. Compl. ¶ 2.) The verified amended complaint further states that venue is proper pursuant to 28 U.S.C. §§ 1355(b)(2) and 1395(a), and 18 U.S.C. § 981(h) because law enforcement agents made multiple undercover purchases of controlled substances, fake identification documents, and other illegal items from AlphaBay vendors, including purchases made from, and illegal items shipped to, the Eastern District of California. (*Id.* ¶ 3.)

//

Next, the amended verified complaint describes the Defendant Assets being forfeited with particularity including the location of the vehicles and real property included in the Defendant Assets. (*Id.* ¶ 1.) The amended verified complaint also states that the Defendant Assets are subject to forfeiture to the United States pursuant to three statutory provisions: 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C), and 21 U.S.C. § 881(a)(6). (*Id.* ¶¶ 46–59; *see also* Doc. 53 at 19.) First, under 18 U.S.C. § 981(a)(1)(A), property subject to forfeiture includes "[a]ny property, real or personal, involved in a transaction in violation of section 1956, 1957 or 1960 of [Title 18], or any property traceable to such property." Title 18 U.S.C. § 1956(a)(1), commonly known as the money laundering statute, makes it a crime to knowingly conduct, or attempt to conduct, a financial transaction involving the proceeds of "specified unlawful activity," either with the intent to promote the carrying on of the unlawful activity, or knowing that the transaction is designed to conceal the nature of the proceeds of the unlawful activity. For purposes of 18 U.S.C. § 1956, "specified unlawful activity" includes, among other things, violations of federal drug laws, including 21 U.S.C. § 841(a)(1), which makes it a crime to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." *See* 18 U.S.C. § 1956(c)(7)(C). Title 18 U.S.C. § 1956(h) further provides that any person who conspires to commit any crime under 18 U.S.C. §§ 1956 or 1957 is subject to the same penalties as the underlying crime that was the object of the conspiracy.

Second, under 18 U.S.C. § 981(a)(1)(C), property subject to forfeiture also includes "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." The term "specified unlawful activity" includes "racketeering activity" as defined by 18 U.S.C. § 1961(1), which in turn, includes violations of 18 U.S.C. § 1028 (fraud in connection with identification documents), 18 U.S.C. § 1029 (fraud in connection with access devices), and 18 U.S.C. §§ 1956, 1957 (money laundering); and 21 U.S.C. §§ 841, 843, and 846 (drug trafficking, use of a communication facility, and conspiracy). 18 U.S.C. § 1956(c)(7)(A).

Third, under 21 U.S.C. § 881(a)(6), property subject to forfeiture to the United States includes:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

With respect to the requirement that the complaint include sufficient factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial, the Court finds the allegations in the Government's amended verified complaint provide sufficient evidence to reasonably believe that the Defendant Assets were involved in a transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or are traceable to property involved in such a transaction; derived from proceeds traceable to a violation of an offense constituting 'specified unlawful activity' under 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such an offense; and/or constitute "moneys" furnished or intended to be furnished in exchange for a controlled substance or was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq.* Specifically, the Government alleges that Cazes founded and operated AlphaBay, the world's largest dark web marketplace for illegal goods and services, and knowingly assisted the buyers and sellers on the marketplace conceal the nature of these illegal transactions. (Am. Compl. ¶¶ 4–6, 11.)

AlphaBay charged a commission for every transaction conducted by its users, which included sales of malware, controlled substances, chemicals, guns, stolen financial information, and counterfeit documents, among other illegal goods and services. (*Id.* ¶¶ 4, 13.) Federal agents traced Bitcoin transactions originating with AlphaBay to digital currency accounts, and ultimately bank accounts and other tangible assets held by Cazes and his wife. (*Id.* ¶ 31.) According to the Government, Cazes concealed and disguised the illicit source of the funds by commingling the criminal proceeds in digital currency exchange accounts and bank accounts controlled by Cazes and his wife, and using an automated mixing and tumbling procedure designed to conceal the

source of the criminal funds when converting Bitcoin (and other cryptocurrencies) to currency. (*Id.*)

At the time of Cazes' arrest, his laptop was logged into the server that hosted the AlphaBay website and law enforcement personnel identified several passwords/passkeys for the AlphaBay website, all the AlphaBay servers, and other online identities associated with AlphaBay. (*Id.* ¶ 33–34.) As a result of the password discovery, law enforcement identified all the information on the AlphaBay servers, including the cryptocurrency wallets contained on each server. (*Id.* ¶ 34, 41.) Law enforcement personnel also discovered a document that identified the value and location of Cazes' assets obtained from AlphaBay's revenues including the vehicles, real properties, bank accounts, and cryptocurrency holdings that are included in the Defendant Assets. (*Id.* ¶¶ 35–40.) "In the absence of assertion of interests in the Defendant [Assets], the Court will not question the facts supporting [their] forfeiture[.]" *Approximately $30,000.00 in U.S. Currency*, 2015 WL 5097707, at *6. The Court therefore finds that the facts, as alleged, provide a sufficient connection between the Defendant Assets and illegal money laundering, racketeering, fraud, and drug activity, to support a forfeiture.

### 2. Notice by Publication

Subject to certain exceptions not present here, the Supplemental Rules require the Government to publish notice of the forfeiture in a manner that is reasonably calculated to notify potential claimants of the action. Fed. R. Civ. P. Supp. R. G(4)(a)(iv). The content of the notice must describe the property with reasonable particularity, state the times to file a claim and to answer the complaint, and identify the name of the Government attorney to be served with the claim and answer. Fed. R. Civ. P. Supp. R. G(4)(a)(ii)(A)–(C). This notice requirement may be satisfied by posting a notice on an official internet government forfeiture site for at least thirty consecutive days. Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C).

Here, publication occurred on the official internet government forfeiture site (www.forfeiture.gov) for thirty consecutive days. (Doc. 13.) The Government filed a Declaration

of Publication stating that notice had been created and published on the forfeiture website for 30 days, beginning on September 27, 2017. (*Id.*) A copy of the notice was attached to the Declaration of Publication, which described the property with reasonable particularity including the locations of the real properties, license plate numbers and locations of the vehicles, account numbers and names on the bank accounts, and virtual addresses of the cryptocurrency, making up the Defendant Assets. (Doc. 13, Attach. 1.) The notice clearly stated the time requirements to file a claim and an answer. (*Id.*) Further, the notice provided the name of the attorney to be served with any claim and answer. (*Id.*) Thus, the Supplemental Rule's notice-content requirements have been satisfied. Fed. R. Civ. P. Supp. R. G(4)(ii)(A)–(C). Additionally, the notice was published for thirty consecutive days from September 27, 2017, through October 26, 2017, on the forfeiture website, which satisfies the Supplemental Rule's notice requirements with regard to frequency and means. (Doc. 13, Attach. 2.)

### 3. Personal Notice

When the Government knows the identity of the property owner, the Due Process Clause of the Fifth Amendment requires "the Government to make a greater effort to give him notice than otherwise would be mandated." *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998). In such cases, the Government must attempt to provide notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action. *Dusenbery v. United States*, 534 U.S. 161, 168 (2002); *see also* Fed. R. Civ. P. Supp. R. G(4)(b). "Reasonable notice, however, requires only that the [G]overnment attempt to provide actual notice; it does not require that the [G]overnment demonstrate that it was successful in providing actual notice." *Mesa Valderrama v. United States* 417 F.3d 1189, 1197 (11th Cir. 2005); *Real Property*, 135 F.3d at 1316.

The Supplemental Rules indicate that the Government must send notice of the forfeiture action "to any person who reasonably appears to be a potential claimant on the facts known to the government." Fed. R. Civ. P. Supp. R. G(4)(b)(i). The notice must include the following

information: the date when the notice is sent; a deadline for filing a claim that is at least thirty-five days after the notice is sent; that an answer or a motion under Rule 12 must be filed no later than twenty-one days after filing the claim; and the name of the government attorney to be served with the claim and answer. *Id.* Here, the Government provided notice of the forfeiture action by mailing copies of the required documentation via FedEx delivery to Martin Cazes, Danielle Heroux, KGYJ Management Limited, Ace Guide Holding, Brilliant Landmark Concept Limited, and Hatrox Limited. (*See* Docs. 17, 28.) Additionally, the Government personally served court documents on Nonsuch Management Limited on December 19, 2017; Cazes' wife Sunisa Thapsuwan (Cazes) and the Estate of Alexandre Cazes on December 21, 2017; and Yaman Properties Co. Limited on January 31, 2018. (Docs. 32–33, 47.) Therefore, reasonable attempts at serving notice on the Known Claimants were made.

### 4. Notice Requirements Involving Real Property

In civil forfeiture cases involving real property, Congress has eliminated the need for the issuance and service of a warrant of arrest *in rem*. 18 U.S.C. § 985(c)(3) ("If real property has been posted in accordance with this subsection, it shall not be necessary for the court to issue an arrest warrant in rem, or to take any other action to establish in rem jurisdiction over the property.") Instead, the United States may initiate a forfeiture action against real property by "posting a notice of the complaint on the property[.]" 18 U.S.C. § 985(c)(1)(B). Here, the Government posted copies of the Notice of Verified Complaint for Forfeiture *In Rem* on the real properties purchased by Cazes in Antigua, Thailand, and Cyprus. (Docs. 24–25, 27, 37–38, 41.) Accordingly, the Government provided proper notice of forfeiture of the real properties included in the Defendant Assets.

### 5. The Time to File a Claim or an Answer

Pursuant to the Supplemental Rules, any person who asserts an interest in or a right in a forfeiture action must file a claim with the Court within the time specified by the direct notice. Fed. R. Civ. P. Supp. G(4)(b)(ii)(B), (5)(a)(ii)(A). Failure to comply with the procedural

requirements for opposing the forfeiture precludes a person from establishing standing in the forfeiture proceeding. *Real Property*, 135 F.3d at 1317.

Here, more than thirty days have passed since the completion of publication, and more than thirty-five days have passed since the date that the Known Claimants were provided direct notice of the Government's complaint in this action. Accordingly, the time to file a claim has expired, and pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of the Court properly entered defaults against Martin Cazes and Danielle Heroux on November 14, 2017; KGYJ Management Limited, Ace Guide Holding, and Brilliant Landmark Concept Limited on January 11, 2018; Nonsuch Management Limited, Sunisa Thapsuwan (Cazes), and the Estate of Alexandre Cazes on January 31, 2018; Hatrox Limited on March 2, 2018; and Yaman Properties Co. Limited on March 23, 2018. (Docs. 18–19, 29, 34–36, 42, 48.)

### 6. Conclusion

The Court finds that the Government has met the procedural requirements applicable to civil *in rem* forfeiture actions as set forth in 18 U.S.C. §§ 983 and 985, the Supplemental Rules, and the Local Rules for the U.S. District Court for the Eastern District of California. This favors the entry of default judgment and the issuance of a final judgment in forfeiture to vest in the United States all right, title, and interest in the Defendant Assets.

### C.  Discretionary *Eitel* Factors

Beyond satisfaction of the procedural requirements, the discretionary *Eitel* factors outlined by the Ninth Circuit also favor granting the Government's Motion. First, the Government would be prejudiced by the denial of its Motion, having spent additional time and effort litigating an action, with no response from the Known Claimants. Second, as set forth above, the Government's claims appear to have merit. Third, as also set forth above, the Government has adhered to the procedural requirements of a forfeiture action *in rem*, including the filing of a sufficient complaint. Fourth, although the Defendant Assets subject to forfeiture are of a substantial value, this alone does not warrant denial of the Government's Motion. Fifth, there are

no genuine disputed issues of material fact. Sixth, it does not appear that the failure of any other claimant to answer is due to excusable neglect. Finally, although merits-based decisions are always preferred, it is not practical where no claimant has appeared in the action, and this factor is outweighed by the remainder of the *Eitel* factors. Accordingly, there is no impediment to default judgment sought by the Government and the Court will recommend that the Motion be granted.

## V. CONCLUSION AND RECOMMENDATIONS

For the reasons discussed above, this Court RECOMMENDS that:

1.      The Government's *Ex Parte* Motion for Default Judgment against the interests of Martin Cazes, Danielle Heroux, KGYJ Management Limited, Ace Guide Holding, Brilliant Landmark Concept Limited, Nonsuch Management Limited, Sunisa Thapsuwan (Cazes), The Estate of Alexandre Cazes, Hatrox Limited, and Yaman Properties Co. Limited, in the Defendant Assets (Doc. 53) be GRANTED;

2.      The Clerk of the Court enter a final judgment of forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C), and 21 U.S.C. § 881(a)(6), forfeiting all right, title, and interest in the Defendant Assets to the United States to be disposed of according to law and the authorities and laws of Thailand, Cyprus, Liechtenstein, and Antigua and Barbuda; and

3.      Within fourteen (14) days of service of an order adopting these findings and recommendations, the Government shall submit a proposed final judgment of forfeiture consistent with the findings and recommendations and order adopting them.

These Findings and Recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code § 636(b)(1)(B). Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's Findings and Recommendations pursuant to Title 28 of the

United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F. 3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F. 2d 1391, 1394 (9th Cir. 1991)); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 7, 2018**                              /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE